*EX PARTE* DAVIDGE *IN RE* THE CUSTODY OF ALICIA HAYNE DAVIDGE AND ROBERT STEWART DAVIDGE.

1. PARENT AND CHILD.—Ordinarily the father has the higher right to the custody of his children, but if it be made clearly to appear that the interest of the child will be promoted by taking it from either parent and entrusting it to another, or from both and entrusting it to other members of the family or even to strangers, the Court will exercise its discretion, having regard to the welfare of the child. Under proof here the allegation that the father is not a suitable person to have the custody of his children; *held,* not sustained. But the custody of an infant of a few months, given for the present to the grand-parents, who had cared for it from birth, at which time its mother died, on account of the special care and attention needed by it of which the grand-mother was best informed.

2. IBID.—GUARDIAN—MINORS.—THE COURT OF PROBATE is not expressly

authorized to appoint guardians of the persons of minors. The claim of the father, as the natural guardian, to the custody of his child, is superior to that of the official guardian.

3. IBID.—The Courts of this State will not ordinarily refuse to aid a father to recover the custody of his child because he intends to take it to his home in a distant State.

4. REHEARING—JUDGMENT will not be opened to permit additional testimony which *might possibly* be obtained by further investigation.

Petition in the original jurisdiction of this Court by William M. Davidge, of the city of Brooklyn, N. Y., for delivery to him by writ of *habeas corpus,* his children, Alicia Hayne Davidge and Robert Stewart Davidge, then in possession of their grand-father, Theodore B. Hayne, of this State.

*Mr. John Gary Evans,* for petitioner.

*Messrs. George Johnstone* and *T. P. Cothran,* for Theodore B. Hayne.

The opinion in this case was filed on May 22, 1905, but on petition for rehearing, a second opinion was filed.

June 3, 1905. The opinion of the Court was delivered by

MR. JUSTICE WOODS. · The petitioner, William M. Davidge, by *habeas corpus* proceedings, asks this Court to award him the custody of his two infant children, Alicia Hayne Davidge and Robert Stewart Davidge. Mrs. Davidge, the mother of the children, left the home of her husband, in the city of Brooklyn, on May 31, 1904, taking with her the little girl, Alicia, about sixteen months old, and went directly to the home of her father, Theodore B. Hayne, in the city of Greenville, S. C. There the infant, Robert Stewart Davidge, was born on October 12, 1904, and there Mrs. Davidge died October 17, 1904, leaving her infant children to the care of her father, who, as respondent in this proceeding, earnestly maintains that William M. Davidge has forfeited his right as a father

to the custody of his children by treatment of their mother in her lifetime so neglectful and cruel as to prove him unfit to be entrusted with their care and education. Upon the establishment of this charge the issue depends.

The law on the subject is well settled. Even as against the mother herself, the father is held to have higher claim to the custody of the children, because upon him the law imposes the responsibility of their support and education, and if in this duty he fails, he not only incurs the penalty of the law, but receives the brand of social disgrace. It is true, if it clearly appear that the interests of the children will be promoted by taking them from either parent and intrusting them to the other, or from both parents and intrusting them to other members of the family, or even to strangers, the Court will exercise its discretion, having regard to the welfare of the children. But none will deny that ordinarily the most valuable possession of a child is the love and care of its parent, and its most sacred right is its right to live under its father's roof. While the welfare and happiness of the child is the main consideration, the parent's right to the love and influence of his children and the happiness they bring to him must be also recognized and considered along with the interests of the child. For a legal tribunal to separate a child from its parent is, therefore, a very strong measure, justified only by convincing proof of the parent's unfitness. No inflexible rule can be laid down by which unfitness may be determined; each case must be decided on its own peculiar facts, but manifestly it is not sufficient to prove the poverty of the parent and that financial benefit will come to the child from separation, or that the parent has faults of disposition and behavior somewhat unusual and trying. The condition in life or the character and habits of the parent must be shown to be such that provision for the child's ordinary comfort and contentment, or for its intellectual and moral development, cannot be reasonably expected at his hands.

With this statement of the law, we proceed to the discussion of the charges against the father of these children,

having given them the most anxious consideration, not only because of the importance of the issue, but because of the manifest sincerity with which they have been made. It will be observed that there is no evidence or even imputation of ill-treatment or neglect by the father of his child before the separation of the parents; on the contrary, the petitioner submits affidavits of a number of persons that to her he was affectionate and attentive.

The gravest charges of misconduct on the part of the petitioner toward his wife rest upon her written and oral statements to the members of her family. Leaving these out of consideration for the moment, we think the other evidence establishes these facts concerning the petitioner's married life. His wife was a woman of unusual refinement and delicacy of feeling, reared by devoted parents in a home of culture. Accustomed to the brightness and joy of such surroundings, it was a severe strain for her to be subjected to the isolation and lonelinesss of a Brooklyn flat. Absorbed in his business struggles, the petitioner failed to give her that considerate attention which was her due, and in addition, on the ground of economy, expressed his wish for her mother to leave his home a short time after the birth of her infant. In similar ways he was rude to other members of her family without any reason that has been made to appear to the Court. After Mrs. Davidge left his home and returned to her father, under the advice of counsel in New York, as he alleges, he gave public notice in South Carolina newspapers that she had left his bed and board without cause and that he would not be responsible for her debts. These things offend one's sensibilities and call for contrition and reformation, but after the death of the mother, when her claims cannot be asserted, we cannot reach the judicial conclusion that they should be regarded sufficient to convince the Court that the intellectual and moral development of these children cannot be expected at the hands of the father. It is due to the petitioner to say, in this connection, that he sought a reconciliation and ex-

pressed regret for his lack of considerate attention, but unfortunately did not apologize for the publication.

It is established beyond all controversy that Mrs. Davidge repeatedly stated that her husband had inflicted physical violence and indignity upon her, and besought her father and other members of her family that her children should never be intrusted to him. Having received these children under such a charge from a sick and dying daughter, we profoundly respect the resolution of the respondent not to surrender them except upon the judgment of the courts of his country. It is now incumbent upon this Court to determine whether the cruelty thus alleged against the petitioner has been established by the preponderance of the evidence, for it will not be denied the burden of establishing such a charge against a father in a proceeding of this kind is on the party who makes it. It will be observed that the charge does not rest on evidence such as would be admissible in an ordinary trial. The witness who makes it is dead, and notwithstanding her very exalted character, the evidence comes to the Court as hearsay without opportunity to the husband to subject it to any legal test whatever. The Court, therefore, has before it on one side the statements of the wife made to members of her family, and on the other the denial of the husband. Even if it could be conceded that the husband's admitted conduct gives color to the charge, all will agree that women of extreme refinement and sensitiveness in the period of great nervous tension before child-birth are sometimes deceived by their own imagination and distress themselves over supposed wrongs, which are either altogether fanciful or greatly exaggerated. Unless allowance is made for the wife's statements made under such circumstances, the husband and other members of the family would often be unjustly condemned. It must be considered also that the petitioner has submitted many affidavits from social and business associates, who testify to his general exemplary character and to his solicitude for his family. We conclude, therefore, the respondent has failed to establish the charge

that the petitioner is not a fit person to have the custody of his children.

The infant, Robert Stewart Davidge, has been extremely delicate from his birth, and Mrs. Hayne has nurtured him with the most intelligent care, both before and since the death of his mother. It is clear, his health and life would be greatly imperiled by depriving him of her experienced attention. Assuming that the petitioner and his mother, who lives with him, would be as careful and solicitous for his welfare, they would be lacking in knowledge of his peculiar needs. For the present, therefore, the Court declines to interfere with the custody of the infant, Robert Stewart Davidge.

The judgment of the Court is, that the respondent, Theodore B. Hayne, restore the infant, Alicia Hayne Davidge, to the custody of her father, and that the petitioner have leave to renew his application for the custody of the infant named by the father Robert Stewart Davidge, and by the mother, Theodore B. Hayne, when he may be advised the change can be made without peril to the said infant, provided such application be made not earlier than one year from this date.

Upon petition for rehearing, the following opinion was filed

PER CURIAM. Two propositions submitted in this petition for rehearing, though fully considered by the Court, were not discussed in the opinion, because the law as to them was regarded too clear in principle to require special attention. Indeed, it was supposed they were not especially relied on by respondent's counsel. Elaborate argument, however, is now submitted in support of respondent's view and the propositions will be separately considered, although they are not regarded serious enough to justify a rehearing. Respondent first submits:

"That the Court has overlooked the fact that the respondent has been duly appointed by the probate court of Green-

ville County guardian of both the persons and estates of the infant children; the writ of *habeas corpus* can issue only in cases of illegal restraint, and so long as the said order of appointment is unrevoked, the custody of said children under said order cannot be illegal."

The act of 1824 (6 Stat., 248), gave to the ordinary the power to appoint guardians of the persons and estates of minors in certain cases. The act of 1839 (11 Stat., 44), entitled "An act concerning the office and duties of ordinaries," conferred the power to appoint guardians of *estates* of minors only. Both of these acts were repealed in 1872. While the court of probate is, by the Constitutions of 1868 and 1895, given general jurisdiction of *business* pertaining to minors, the jurisdiction and disposition of their persons is not expressly conferred. Section 38, Code of Procedure, provides as follows:

"The judge of probate shall have jurisdiction in relation to the appointment and removal of guardians of minors, insane and idiotic persons, persons *non compotes mentis,* and in relation to the duties imposed by law on such guardians, and of the management and disposition of the estates of their wards."

Certainly it cannot be contended this enactment expressly confers upon probate courts the power to appoint guardians of the persons of minors. It is to be observed further, that the provisions of chapter 83, article I., of the Civil Code, entitled, "Concerning Guardians in General," seem to relate to the estates of wards and not to the custody of their persons. It might be argued from the omission of the express authority to grant guardianship of the person to the court of ordinary, and its successor, the probate court, that the law makers intended to deny to these courts the right to do more than appoint guardians of the estates of minors.

But if it be conceded that the probate court may appoint a guardian of the person of an infant, nevertheless, even if our statute law was silent as to the parent's rights, it would be most extraordinary and revolting to hold that such

guardian appointed without notice, on his own *ex parte* application, could obtain the custody of an infant and withhold it from the father, its natural guardian, on the ground that the guardian's custody would not be illegal. The superior claim of the father as the natural guardian to the custody of the child over that of the official guardian is universally recognized. But our statute law is not silent, for it expressly gives to the father the right to dispose of the custody of an infant by deed or will. Civil Code, sec. 2689. His power to dispose of its custody necessarily implies his legal right to the custody against the world, and makes the custody of a guardian and its restraint of the child from the father illegal. It is true, this right of the father as the natural guardian is subordinate to the interest of the child, and may be forfeited by him, but it is not subordinate to the claims of an official guardian.

But aside from the provisions of our statute, courts have not hesitated to exercise their chancery powers in *habeas corpus* proceeding to adjudge the custody of children, especially to restore those of tender years to the father or mother as the natural guardian against the official guardian, or any other person having charge of them. As it is said in Hurd on Habeas Corpus, page 453, "The use of the writ of *habeas corpus* in this class of cases, infers some modification of the general idea of *imprisonment,* and an extension of the original design of the writ.

"The term *imprisonment* usually imports a restraint contrary to the wishes of the person; and the writ of *habeas corpus* was designed as a remedy for *him* to be invoked at *his* instance, to set *him* at liberty, not to change his keeper. But in the case of infants, an unauthorized absence from the legal custody has been treated at least for the purpose of allowing the writ to issue, as equivalent to imprisonment; and the duty of returning to such custody, as equivalent to a wish to be free. It has been held that the writ may not only issue without privity of the child, but against its express wishes." 15 Am. & Eng. Ency., 150-185. *The people* v. *Mercein,* 8

Paige Ch., 47; *Gwynn* v. *McCauley*, 32 Ark., 97; *Richards* v. *Collins*, 17 Atl., 831 (N. J.) ; *Buckley* v. *Perrine*, 34 Atl., 1054.

The second proposition is "that this Court is without jurisdiction to order these children into a foreign jurisdiction." The Court has only ordered the custody of the child, Alicia Hayne Davidge, to be restored to the father. Without any reference to the merits of this cause, it would hardly be contended that this Court would be impotent to aid a father to recover the custody of his child illegally detained in this State, merely because he intended to take it to his home in another State. Cases might arise where the Court, in the interest of the children, would refuse to permit their removal, or allow it only on terms. But, as said by Chancellor Walworth, in *Wood* v. *Wood*, 5 Paige Ch., 595, 604: "It must be a very extreme or special case, however, which would induce this Court to interfere with the natural rights of a parent in this respect." As has already been held, such a case is not here presented.

By reference to the opinion heretofore rendered, it will be seen that other points mentioned in the petition are fully considered and decided. It only remains to say that after a full hearing, it is manifest the judgment may not now be opened to allow the respondent to offer further testimony as to existing facts, upon the mere vague intimation that additional evidence might possibly be obtained by further investigation.

The petition for rehearing is refused.