## TAYLOR v. TAYLOR.

No. 27822. Feb. 1, 1938.

Stephen A. George, for plaintiff in error.

William D. French and D. D. Jennings, for defendant in error.

PHELPS, J. This is a habeas corpus action by a father for the custody of his six and a half year old son. The defendant is the widow of plaintiff's deceased brother. A different trial judge from the present one, in a former action, held for the defendant, leaving the child with her. In a few months the plaintiff then filed the present action, and on the hearing much evidence and many witnesses were heard. No order was made at that time, and subsequently another hearing was had, at which the plaintiff adduced more evidence. The trial judge in the instant case likewise held for the defendant, and the plaintiff appeals. The defendant also appealed from a certain portion of the judgment, but that phase of the case will be discussed later.

The child's mother died within ten hours after its birth. This left the plaintiff with two other small children. Plaintiff had several brothers or sisters, who had children of their own, but there was one brother and his wife (defendant) who had no children. A family council was held, resulting in the plaintiff's consent that said brother and the defendant take the child and rear it. There was reliable evidence at the hearing to the effect that the plaintiff at that time intended to give the child permanently to his brother and defendant, and promised never to reclaim it, and so no adoption proceedings were had. Children are not legally subject to barter or sale or gift in this state and so this question, over which the parties argue so much, is for present purposes immaterial.

Thus, when the child was but three days old, the plaintiff's brother and the brother's wife, the defendant, took it to their home. It was sickly and weak and they nursed it carefully into a state of good health, not without medical expense and care. In all ways they treated the child as if it were their own, and gave it the same loving care and affection. Three years after the child's birth the defendant's husband died, and the defendant continued caring for it in the same manner. She moved into the city of Wapanucka and there bought a home in order that the child could be afforded better educational facilities. In spite of plaintiff's apparent lack of interest throughout the years, as hereinafter recounted, the defendant has at all times encouraged the boy to love and respect his father, has never denied the plaintiff the right or opportunity to visit the child or take it with him temporarily, and has frequently taken it for visits to the home of plaintiff, who lives but a mile and a half from the above city, and on those occasions has stayed a day or more. She is of excellent moral character. Her financial condition is moderate and probably slightly better than that of the plaintiff. The liberality of attitude and fairness of conduct demonstrated by this woman toward the plaintiff, his family, and the child, is seldom equaled in the records appearing before this court in similar cases. There can be no doubt about the present welfare of the child in her custody, which, to it, is its natural environment.

As to the plaintiff, and candidly reporting the record before us, the following appears

to be the situation. He is a man of good moral character and moderate financial means. During the lifetime of the child he has contributed the sum of five dollars toward its upkeep. When he has hauled firewood to the home of defendant, to help keep the boy warm, he has charged her for it. He has never given the boy a Christmas present, except he believed that once he gave him a quarter, "not positive whether I did or not." He kept the little boy's clothing, and also his shoes, that he wore on one occasion to plaintiff's house, and has never returned them. His brother, the child's uncle, had contributed a small monthly sum toward the support of the child, and during the six months preceding the trial had sent it to plaintiff for the child. Plaintiff has kept this money and has failed to account for it except to say that his reason for not turning it over was because the boy is distant to him in attitude and does not appreciate anything he gives him. A group of such facts, including others not mentioned, is all that the trial court had with which to form his judgment.

The record reveals that from the viewpoint of his own present welfare the boy is in ideal surroundings. Many witnesses, including some of the plaintiff's relatives, testified that it would be highly injurious to the child at his tender age to make such a sudden and drastic change in his environment and status of life as would be necessary if this judgment were reversed. These statements were largely opinions and conclusions, but their reception is not urged as error, and furthermore, facts were testified to in support thereof. In the plaintiff's home there are two small children and a grown son of his own, and there are no women other than his own daughter-in-law, who has a babe in arms, of her own, to care for at present.

In appealing, the plaintiff proceeds largely on the assumption that section 1685, O. S. 1931, providing in substance that the father of a legitimate unmarried minor is entitled to its custody, is controlling of the case. But in Bishop v. Benear, 132 Okla. 116, 270 P. 569, we held that it is also proper to be guided somewhat by section 1504, O. S. 1931, providing that:

"In awarding the custody of a minor, or in appointing a general guardian, the court or judge is to be guided by the following considerations:

"First. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of sufficient age to form

an intelligent preference, the court or judge may consider that preference in determining the question."

A review of our former decisions, which in detail is not necessary here, reveals that the considerations affecting the question in cases of this kind are the welfare of the child, and natural and legal rights of the parent, and the rights of those who have for years occupied the position of parents. Of these, we said in the Bishop Case, supra, the welfare of the child is the chief consideration. See syllabus 4 thereof, which is paraphrased in the 3d syllabus hereof. Also, for other cases where the welfare of the child was accorded superiority over the claims of the parent, see Hamann v. Miesner et ux., 148 Okla. 50, 297 P. 252; Morris v. Morris, 81 Okla. 222, 198 P. 70; Richards v. Christy, 150 Okla. 221, 1 P. (2d) 168; Ex parte Lebsack, 168 Okla. 299, 32 P. (2d) 923; Ex parte Yahola, 180 Okla. 637, 71 P. (2d) 968. In the last-cited case we said:

"The right of the father to the custody of his minor child, when its mother is dead, is well recognized. Usually the fact of such close relationship is accorded almost exclusive importance in determining who shall have the custody of the child. The rule, however, is not without its exceptions. It is not an absolute right, but one which must at all times be qualified by considerations affecting the welfare of the child.

"The conflict illustrated by the present case has, in one form or another, been before this court frequently. In some cases the father has prevailed and in other cases he has been denied the custody. Each case depends upon its own facts and circumstances. Ordinarily, even though the financial interests of the child might be better served elsewhere, the custody is left with the father if he is able to reasonably care for the child, and if he shows himself to be a fit person to be intrusted with its custody.

"But where his conduct has evidenced a state of indifference to the child, as opposed to the ability, good character, and love possessed and manifested by his opponents who have reared such child from babyhood, the court may be justified in finding that the best interests of the child would be more properly served by leaving it with the latter."

What may serve the best interests of the child at its present tender age may not be necessary at all to its best interests later. It is apparent from the record that the trial judge attached some importance to the age of the child. We are not prepared to say that he erred, having, as he did, the parties, the child, and the witnesses before him,.

and having that opportunity of personal study of the parties which the record never affords. As was said in the Richards Case, supra:

"The trial court saw the witnesses, heard the testimony, saw the child, and was familiar with all surrounding circumstances and was in a much better position to determine what was for the best interest of the child, than this court."

In Ex parte Lebsack, above, it was observed that:

"The trial court had all the parties before it and had an opportunity to observe their conduct and demeanor, and now, considering that the welfare of the child, as well as the wishes of the parties, is of importance, we are not willing to say that the judgment is contrary to the weight of the evidence or contrary to law."

And in the same manner of reasoning, in Hamann v. Miesner, supra, and Panther v. Panther, 147 Okla. 131, 295 P. 219, we said:

"The presiding judge herein was peculiarly well informed as to whose custody would inure to the best interest and welfare of the minor children."

Three different hearings within a short period of time were had on this matter, and two different district judges decided that at least for the time being the child should be left where it is. The record reveals that the trial judge did not disregard the rights of the parent, but, on the contrary, attached considerable weight thereto and arrived at his decision nevertheless.

The plaintiff having appealed, the defendant also appealed by cross-petition in error, complaining of that part of the judgment requiring her to take the child to the home of plaintiff at least once a week, and she asserts that this will entail considerable trouble and expense to her. We do not agree. The parties live but a mile and a half apart, and, at any rate, it will be only a slight increase in the burden which she has been assuming voluntarily. It is to be hoped that the parties will take advantage of this opportunity to heal whatever breach has been caused by the litigation and for the sake of the boy subordinate their own wishes to the end that he be given a fair chance with this world which he so recently entered, and against which he cannot successfully cope without the understanding and unselfish consideration of those surrounding him.

The judgment is affirmed.

OSBORN, C. J., and RILEY, CORN, HURST, and DAVISON, JJ., concur. WELCH, J., dissents. BAYLESS, V. C. J., and GIBSON, J., absent.

WELCH, J. (dissenting). I think the decision in this case, without sufficient grounds, denies this father his statutory right and common-law right to the custody of his son, the record and opinion disclosing that the father is of good moral character and now able to properly rear and care for his child. And in reaching that conclusion the decision here is in favor of the defendant, who is not related in any manner to the child.

The opinion purports in the third paragraph of the syllabus to follow Bishop v. Benear, 132 Okla. 116, 270 P. 569, but in that case the contest was between the father of the children and the maternal grandparents of the children. The prevailing party in the instant case sustains no blood relationship to the child.

The prevailing party here was related to the child by marriage, that is, her husband was the paternal uncle of the child, but her husband died more than three years ago. It is shown by the opinion that she is a woman of excellent character, but the opinion discloses that the child's father is of no less good character, and while she is in some better position financially to take care of the child, the opinion discloses that the father is sufficiently able to care for the child, he being referred to in the opinion as a man of "modest financial means." There is no contention that the father is in any respect an unfit person to have custody of his son, and I think in this case that we should fully recognize his right to that custody.

It seems to me that each of the cases relied upon in the majority opinion has distinguishing features from the case at bar, as I shall briefly demonstrate. In Bishop v. Benear, above referred to, those contesting against the father were the maternal grandparents of the children and thus bound to the children by the ties of blood relationship; the mother of the children having died, they therefore were the closest maternal relatives of the children. And in addition the record strongly indicates that the home of the father of the children would be an improper place to rear and care for the children. No such relationship or proof appearing in the record in the instant case.

In Hamann v. Miesner, 148 Okla. 50, 297 P. 252, the contest was likewise between the maternal grandparents of the child and the father of the child, the mother of the child having died, and the child's father having subsequently married a much younger wife. It was observed in that opinion that it was not shown that the father's present wife

would welcome the child into their home, nor that the father "intended to take the child into his home or what he expected to do with it if given its custody." Those items of consideration were not present in the instant case.

In Morris v. Morris, 81 Okla. 222, 198 P. 70, the contest was likewise between the maternal grandparents of the child and the father of the child. In paragraph 3 of the syllabus it was held:

"The decree awarding the custody of a child to her mother's parents, who were adjudged to be fit persons, rather than to her father, who was adjudged to be an unfit person, having been made nearly four years ago, the child being then only four years of age, will not be reversed now and custody awarded to the father, this court being without knowledge as to what changes have since taken place, and having no knowledge as to what conditions exist at this time. * * *"

Thus indicating that there had been a determination of the unfitness of the father to have the custody. There is no such determination or contention in the instant case.

In Richards v. Christy, 150 Okla. 221, 1 P. (2d) 168, the contest was likewise between the maternal grandparents of the child and the father of the child (the mother of the child having died). It was observed in the opinion that the father of the child desired to take the child from her maternal grandparents and place her in the home of his brother and his sister-in-law, who had two young children of their own. The court concluded in favor of the maternal grandparents, and these facts distinguish that case from the case at bar.

In Ex parte Lebsack, 168 Okla. 299, 32 P. (2d) 923, the contest was likewise between the father of the child and the maternal grandparents of the child (the mother of the child having died). In that case the trial court specifically found that the father "is not a fit and proper person to have the care, custody, and control of said minor child, Merle Lebsack." There is no such blood relationship, nor any such finding or contention of unfitness of the father, in the instant case.

In Ex parte Yahola, 180 Okla. 637, 71 P. (2d) 968, the contest was likewise between the father of the child and the maternal grandparents of the child (the mother of the child having died). In that case it was forcefully pointed out that the real motive of the father in seeking to regain his child was to better his own financial position. There is no such item in the present case,

nor any circumstances which could be compared thereto.

In Panther v. Panther, the last-cited case in the majority opinion, 147 Okla. 131, 295 P. 219, the contest was between the father and mother of the children in a divorce action. It was the court's duty to award custody of the children either to the mother or to the father. The court there awarded the children to the mother, but that decision cannot support the decision here awarding the custody of this child to the defendant, who is not related to the child here involved.

I thus observe that there is no precedent in this state for denying the father the custody of his son, so as to award the custody to one who is not related to the child, merely upon the conclusion of the court that the child will or may be better cared for, where, as in this case, the father is of good moral character and is now able to properly maintain his son, and there is no question of any improper motive in his seeking to obtain the custody of his son.

There is ample, and I think compelling, authority to determine this case in favor of the natural and statutory rights of the father. The general rule is stated in 29 Cyc. 1590, as follows:

"A parent who is of good character and a proper person to have the custody of the child, and reasonably able to provide for it is entitled to the custody as against other persons, although such others are much attached to the child, and the child attached to them, and prefers to remain with them, and they are in all respects suitable to have the child and able to support and care for it, and even though they are of larger fortune or able to provide for the child more comfortably than the parent, or to care for it better, or to give it a better education than the parent can afford."

This statement of the rule was quoted and fully approved by this court in Hedtke v. Kukuk, 93 Okla. 264, 220 P. 615. There the custody of two children was involved, and it was a contest between the father and the maternal aunt of the children. The father and mother separated after the birth of the second child, the mother obtained a divorce and was granted custody of the children. About three years later, upon the mother's death, the maternal aunt took the children. Notwithstanding the fact that the father had theretofore been denied the custody of the children as against the mother in the divorce action, this court fully recognized the father's right to custody as against the other custodian, the maternal aunt, in the absence of a showing of unfitness of the

father, and these rules were laid down in paragraphs 2 and 3 of the syllabus:

"When the mother of the minor child is dead, a father, who is of good character and a proper person to have the custody of the child, and reasonably able to provide for it, is entitled to the custody as against other persons.

"In a habeas corpus proceeding, brought by the surviving parent to recover custody of a minor child, the burden of proof is upon the respondents to show they hold the child under an order of a court of competent jurisdiction, or that the petitioning parent is an unfit and improper person to have such care and custody."

And in the body of the opinion the following was quoted from Ex parte Davidge, 72 S. C. 16, 51 S. E. 269:

"To separate a child from its parent is, therefore, in a very strong measure, justified only by convincing proof of the parent's unfitness. No inflexible rule can be laid down by which unfitness may be determined. Each case must be decided on its own particular facts. * * * The condition in life, or the character and habits of the parent must be shown to be such that provision for the child's ordinary comfort and contentment, or for its intellectual and moral development, cannot be reasonably expected at his hands."

It was necessary there that the trial court be reversed and it was so ordered.

In Jamison v. Gilbert, 38 Okla. 751, 135 P. 343, we have a decision of special force on account of the almost exact similarity of the facts in material substance. There, the mother of the child having died, the child, while very small, was given by his father to the child's maternal grandparents. who cared for the child for a number of years, with no contribution toward his support from the father. They properly provided for and trained the child, and to quote from the opinion, the trial court found that they "in all things looked after the best interest of the child, and that they are in a better position to look after his welfare than is plaintiff in error, his father." Upon those findings of fact the trial court decided against the father and in favor of the other custodian of the child. Thus we have a fact situation and trial court determination quite similar to the instant case. This court, speaking through Chief Justice Hayes, after reviewing the authorities, found no difficulty in deciding in favor of the natural and legal rights of the father. There, too. the court saw fit to quote in full the statement of the rule from 29 Cyc. 1590, and the reasoning of the court points out with emphasis that the mere conclusion of the trial court as to the better interest of the child should not of itself outweigh the fixed right of the father. The opinion in that case proceeds clearly upon the theory that the right of the father is a fixed and valuable right and of value both to the father and to the son, and not to be set aside by any court, except in the case of some unfitness of the father. It was there held in paragraphs 2 and 3 of the syllabus as follows:

"The unfitness which will deprive a parent of the right to the custody of his minor child must be positive and not comparative; and the mere fact that his minor child might be better cared for by a third person is not sufficient to deprive the parent of his right to its custody.

"It is not sufficient to establish the unfitness of a parent for the custody and control of his minor child, to show that he has some faults of character or bad habits; it must be shown that his condition in life or his character and habits are such that provision for the child's ordinary comfort and contentment. or for its intellectual and moral development, cannot be reasonably expected at the parent's hands."

In the opinion the court noticed that a final determination against the father and in support of another custodian would naturally result in an irrevocable estrangement between father and son, and that such conclusion is justified in that case and in the instant case I cannot doubt. And this court there deemed it of great importance to protect "the welfare and happiness of this child of tender years from the effect of loss of respect and affection for his father." In that case the court did not overlook the position and feelings of the custodians of the child, who for a number of years had cared for him, and I quote with full approval the following statements from the opinion:

"We can sympathize with the grandparents in their distress at the prospects of being separated from a child to whom they have become deeply attached because of natural ties and associations, but sympathy cannot be permitted to enter in the determination of the rights of this father, whom the voice of nature makes the natural guardian of his child, or into the consideration of the permanent welfare of this child, who for many years yet must have a protector and a provider. * * *"

And the opinion concluded as follows:

"The aid defendants in error have rendered the father in caring for this child at a time when his circumstances were such that he was unable to give it personal attention is highly commendable, and may

seem to them to merit their further custody and control of the child, but in calmer moments, when they have fully considered the matter and remember the love and affection for their own children and the pleasure and pride they took in rearing them, and realizing what a loss it would have been to them to have surrendered their own children to others permanently, we think they will then conclude that they should do as they would be done by, and be willing that this father should have given to him that which is his own.

"The judgment of the trial court is reversed, and the cause remanded, with direction to grant the writ and award the custody of the child to the plaintiff in error. All the Justices concur."

All these expressions are apt in the instant case, and in my judgment direct us to the correct conclusion in this case in favor of the father.

In both of those cases, that is, Hedtke v. Kukuk and Jamison v. Gilbert, supra, the trial courts found against the father and in favor of the other custodians, and upon the same theory followed by the trial court in the instant case, that is, that it then appeared to be for the better interest of the child not to disturb the then existing custody of the child. In both of those cases, however, the trial court judgment was reversed, not because the trial judge was not justified in concluding from the circumstances that the present custody of the child was satisfactory and good for the child, but reversal was required because that conclusion was not sufficient to authorize and justify the court in nullifying the statutory rights of the father and brushing aside his natural and common-law rights. In each of those cases the other custodian was the nearest maternal relative of the child, while, as I have pointed out, the other custodian in the instant case is of no blood relation to the child. If the rule was properly applied in those two cases, then that rule is surely none the less applicable in the instant case.

Numerous authorities are cited in these prior decisions and in the text quoted, which demonstrate that the great weight of authority argues for the rule that fully recognizes the rights of the father in all such cases as the one at bar. See, also, Sinquefield v. Valentine, 159 Miss. 144, 76 A. L. R. 238. No contrary authority directly applicable is cited in the briefs, and I have observed none.

It not infrequently occurs that when a mother dies leaving a very young baby, circumstances make it necessary for the child to be then placed in some other custody and cared for by some other person than the father, and this arranged custody may continue for years by consent of all parties. This in practically every such case is a proper and humane arrangement, but it does not relieve the surviving parent of parental duties and liabilities, and ordinarily does not in any manner affect the right of the parent to regain custody when by growth of the child and change of circumstances the parent is able to furnish a proper place and to properly care for the child. That has been specifically held by various courts. Miller v. Wallace, 76 Ga. 479, 2 Am. St. Rep. 48; State ex rel. Kearney v. Steele, 121 La. 215, 46 So. 215; Griffin v. Gascoigne, 60 N. J. Eq. 256, 47 Atl. 25; Ex parte Reynolds, 73 S. C. 296, 53 S. E. 490; Jamison v. Gilbert (Okla.) supra, and other cases there cited; Sherry v. Doyle (Utah) 249 P. 250, 48 A. L. R. 131.

It is generally held that where in divorce proceedings the custody is granted the mother as against the father, and the mother thereafter dies, the father is fully entitled to assert his rights to custody in the absence of affirmative proof of unfitness, or showing of some compelling cause or some reason of great force why the other custodian should continue to have the children. See Clarke v. Lyon (Neb.) 20 L. R. A. (N. S.) 171, and accompanying annotation.

The father's right to immediate custody need not necessarily prevail in any case where the child's health or some requirement of special care or treatment makes it really necessary that the custody be not presently changed, or where to go with the father would subject the child to dangerous hardships or exposure, or constitute some serious menace or threat to his well-being. But no such condition exists in the instant case, nor is there any other special reason supporting the trial court's conclusion here.

In the absence of any showing of unfitness in the father, or any special reason why the present custody must continue, or why the change of custody to the father would be seriously injurious, I think the opposite result should be reached and the judgment for the father.

I think the majority opinion is erroneous.

I cannot concur in it. I dissent.