## Ex parte HUDSPETH.
### No. 36060.

Supreme Court of Oklahoma.
June 1, 1954.

Bruce & Rowan, Oklahoma City, for petitioner.

E. William Brown, Oklahoma City, for respondent.

CORN, Justice.

Petitioner, Organ Hudspeth, had been the husband of Elnora Hudspeth, and was the natural father of Charles Hudspeth, the minor whose custody is involved herein. Prior to the boy's birth the mother had sued petitioner for divorce. In January, 1938, shortly after his birth, the mother was granted a divorce and custody of the boy and an older sister. The decree also required this petitioner to pay $25 child support. The present record discloses petitioner did not willingly make full compliance with this portion of the decree. Following his birth, Charles and his sister, together with their mother, made their home with respondent, Sarah Thomas, the maternal grandmother, in Oklahoma City. The mother later remarried, but Charles and his sister remained under the care of respondent.

Elnora Hudspeth died in September, 1951. Shortly after her death petitioner filed an application to modify the divorce decree as respected custody of the children, and an order was entered placing these children in his custody. Since the children were in school petitioner agreed they might remain with their grandmother until expiration of the school term in May, 1952. When school closed petitioner sent tickets and transportation expenses for the children to make the trip to his home in California. Whether under persuasion of respondent, or from refusal out of their own volition, the two children did not go to petitioner's home in California.

This matter was heard September 18, 1952, on petitioner's application for writ of habeas corpus, which set out his right to legal custody of Charles Hudspeth; that respondent's influence and persuasion had prevented such minor from joining his father; that such detention of the minor by respondent was unlawful and violative of petitioner's rights, and detrimental to the child.

At the hearing a response to the writ was filed, setting forth that respondent had been in sole and exclusive charge of the minor since birth; that the father was an unfit person to have custody; that this minor preferred to remain with respondent in order to enhance his own opportunities for a musical career; the child's best interests would be served by allowing him to remain with the respondent.

Considerable evidence was introduced to show petitioner was a fit person and financially able to give his son a proper home. Likewise, there was some evidence to show that he had contributed to the minor's support in some instances.

Respondent's evidence disclosed her continuing care of the children over the years. The record discloses this minor is quite musically inclined, and although above the average scholastically, devotes the greater portion of his time to musical endeavors. By his own testimony this child, nearly 15 years old at the time of this hearing, had seen his father very few times (3–4) during his lifetime. He bore his father no animosity, but having lived his entire life with respondent he did not want to move to California. His friendships and musical connections were in Oklahoma City, where he was associated with a recognized choral organization, played for churches and made radio appearances, and practically was able to support himself by his musical ability. Additionally, the trial court interviewed the boy privately and ascertained both his desires and the reasons for the boy's feelings in the matter. As a result of the interview the court noted the boy's desire to remain with respondent did not arise from any animosity toward petitioner, but simply because he had spent his life in Oklahoma City and had many things worked out for himself here.

At the conclusion of the evidence the trial court made certain specific findings as the basis for the conclusion that the petition for the writ should be denied and this boy permitted to remain with respondent. In substance the court stated: (1) This boy's best interests being involved it would be contrary to his welfare to require anything to be done that would take him away from Oklahoma City; (2) consideration of petitioner's parental rights was insufficient to overcome what was determined as being the child's best interests; (3) under the statute, 10 O.S.1951, §§ 17–19, respondent was entitled to custody of the boy by virtue of having cared for him since infancy. Judgment was entered denying the petition for writ of habeas corpus, granting respondent the continuing care of the minor, and enjoining petitioner from interfering with respondent's care of the child or removing him from the court's jurisdiction.

Petitioner's argument for reversal of this judgment is presented under three propositions. It is argued under the first proposition that the only issue involved is the question of the right to custody of the child. Hence, petitioner now contends it was reversible error for the trial court to admit certain of respondent's evidence relating to petitioner's failure to comply with the order and judgment in the original divorce action. It is argued that respondent offered no evidence to show petitioner was an unfit person to have custody, so that the evi-

dence complained of did not relate to his unfitness or inability to care for his children and thus was incompetent and erroneously admitted. We consider it unnecessary to consider such argument at length, for the reason that even casual examination of the record will disclose that no prejudice could have resulted from admission of the evidence complained of on appeal.

10 O.S.1951 § 5, provides:

"The father of a legitimate unmarried minor child is entitled to its custody, services and earnings; but he cannot transfer such custody or services to any other person, except the mother, without her written consent, unless she has deserted him, or is living separate from him by agreement. If the father be dead, or be unable, or refuse to take the custody, or has abandoned his family, the mother is entitled thereto."

The principal contention is that under the above statute petitioner was granted an absolute right to custody of his minor son. The argument to support this contention is based upon the language of several of our earlier decisions, all holding to the effect that to justify a court in depriving a parent of his child's custody the evidence must clearly and conclusively show the parent's unfitness. See Hedtke v. Kukuk, 93 Okl. 264, 220 P. 615; Brooks v. Preston, 134 Okl. 272, 273 P. 345; Sherrick v. Butler, 175 Okl. 538, 53 P.2d 1097; Green v. Hight, 194 Okl. 214, 148 P.2d 475. Hence petitioner concludes that because the burden was upon respondent to show him an unfit person, and since the evidence showed him a fit person and financially responsible, the issue was to be decided solely upon the rule announced in the cited cases. Thus, there being no evidence establishing his unfitness, it was reversible error for the trial court to refuse to issue the writ.

■ Two valid reasons preclude application of the rule contended for by petitioner. 30 O.S.1951 Guardian and Ward, § 11, in part, provides:

"In awarding the custody of a minor, or in appointing a general guardian, the court or judge is to be guided by the following considerations:

"1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question."

Subdivision 1 (just quoted) clearly invests the trial court with authority, in determining the matter of custody, to consider the child's own preference in the matter in instances where the child is of sufficient age to form an intelligent preference. The record herein discloses this boy was nearly 15 years of age when the matter was heard. The boy expressed a definite wish to remain in the care of his grandmother. From the remarks of the trial judge it is plain the minor was of the age and intelligence to give mature consideration to his own problems, and his discussion with the court was a factor which received serious consideration in settling the matter of his custody.

■ The second reason supporting the trial court's judgment is to be found in our recent decision in Long v. McIninch, Okl. 264 P.2d 767. We there considered the exact contention advanced by petitioner herein, that 10 O.S.1951, § 5 gives the natural parent absolute right to custody of a minor child, to the exclusion of other considerations. And, in that case even a more serious question was presented because of the minor's tender years, and the age and circumstances of the grandparents. In considering the matter we directed attention to three interests which always are the subject of careful scrutiny in such cases. Therein we again acknowledged the applicable rule in such cases to be that expressed in Taylor v. Taylor, 182 Okl. 11, 75 P.2d 1132, as follows:

"The right of a parent to the custody of a minor child is of great importance in awarding its custody, but it is not an absolute right, and is qualified by considerations affecting the welfare of the child."

Also see Osburn v. Roberts, 197 Okl. 206, 169 P.2d 293; Russell v. Russell, 208 Okl. 41, 253 P.2d 136; Long v. McIninch, supra.

In view of the conclusion reached above the lack of merit in the contention the trial court erred in overruling petitioner's motion for new trial is apparent.

Judgment affirmed.

HALLEY, C. J., and DAVISON, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.