**In the Matter of the Guardianship of Loretta June YOUNG and Wilma Faye Young, Minors.**

**No. 36499.**

Supreme Court of Oklahoma.

March 29, 1955.

Renegar & Renegar, Oklahoma City, for appellant.

Robert D. Crowe, Oklahoma City, for appellee.

CORN, Justice.

This appeal is from an order and judgment affirming a county court order in a guardianship and child custody case. The contest is between petitioner (James Fay Young), the natural father, and the maternal grandmother, (Mrs. G. W. McKiddie) as to guardianship and custody of two daughters, age 10 and 12 when the case was tried. Petitioner and the childrens' mother were divorced about a year prior to the mother's death in September, 1952. In that proceeding the mother was granted custody of the children, and certain property was set over to provide child support. Prior to death of the mother, who underwent a lingering illness, the maternal grandmother, respondent herein, lived with the family for some time and assisted in care of the mother and children. Following the mother's death respondent took the children to her home, in another county, and cared for them there.

Twice thereafter petitioner instituted proceedings in the district court seeking custody of the children. The district court left custody in the grandmother, but gave petitioner the right of visitation and custody for one weekend each month. Thereafter petitioner applied to the county court for appointment as guardian. Respondent resisted the application and after hearing the matter the county judge entered an order appointing her guardian of the persons and estate of the minors.

June 9, 1953 petitioner filed application seeking to vacate and set aside the previous order of the county judge. The petition alleged the minors' ownership of property within the county, appointment of respondent as guardian of their estate and that the property was being permitted to deteriorate until it was in danger of becoming worthless; petitioner's way of life had changed since the previous hearing and he had joined a church, was leading a better life and maintaining a proper home in which to rear his family; that he was able and willing to assume guardianship and custody of his children; as the natural parent he had a paramount right to the custody and control of the children. After a hearing the county court denied the application and petitioner appealed to the district court.

The hearing in the district court disclosed that, prior to his wife's death, petitioner entered into a meretricious relationship with another woman. In 1948 a child was born of this adulterous union, and in 1950 another child was born to these parties. Sometime after his wife's death petitioner married his paramour and, at the time of this hearing, was living with this wife and three small children in a two room house having no sanitary facilities. However, he testified his income was sufficient to provide for his family, and if granted custody of these children he intended to construct three additional rooms. The children had visited in petitioner's home for nine days during the Christmas season in 1952, but after that time he had not written to them, had them in his home as permitted by the court's order, nor sent them presents. Petitioner's explanation of these facts was that respondent had instilled hate for him in the children, and he did not attempt to visit them in respondent's home in order to avoid trouble.

Approximately a year prior to trial petitioner had undergone a character reformation, and had joined a church and become an active worker therein. There was considerable testimony elicited from the church pastor, the pastor's wife, and a fellow church worker, to the effect that both petitioner and his wife were changed individuals, leading a proper life, and that his home would provide a proper environment and be the best place for these children to be reared. The testimony of these witnesses, as well as petitioner, was substantially the same as that given in a prior district court hearing approximately a year before.

The evidence relative to the guardian's alleged mismanagement of the minors' property concerned a three room non-modern house in Oklahoma City. Petitioner's evidence was that in the past the house had rented for $25–$35 per month, whereas the guardian had rented the property for $10 per month. No evidence was offered relative to mismanagement of funds belonging to the minors or their estate.

No purpose would be served by detailing the evidence respecting petitioner's conduct and activities over the years. As early as 1944 respondent spent time in the home assisting in care of the seriously ill wife and mother. Living conditions were very modest, and it was necessary for respondent and her husband to help in providing food during the period of petitioner's premarital infatuation with his present wife. From June, 1951, until death of the minors' mother respondent bore the entire burden of the household, including financial assistance. After January, 1951, respondent and her husband had the entire care of the children and have loved and provided for them. There are ample school facilities available and the children attend regularly and have done well. The children disliked staying with their father and have been happy and well cared for in the grandparents' home.

The oldest girl testified her father had abused her mother, had mistreated her, and that they were unhappy staying with him; the grandparents did not talk against the petitioner, who had not visited them although he had driven by the house on occasions without stopping. The two girls were well received by other children in the school they attend, whereas other children in Oklahoma City knew of petitioner's past conduct and made reference thereto, to the extent that both girls were abashed by such

remarks, and sensitive because of his misconduct.

Petitioner urges two propositions in seeking reversal of the trial court's judgment. Here, as in the trial court, petitioner contends the proof of mismanagement of the estate was sufficient to justify removal of respondent as guardian. The basis for such argument is that respondent leased the house above referred to for $10, per month when in fact the property should have rented for a minimum of $25 per month.

Respondent's evidence was that the house was badly in disrepair, and could not be rented at any price. However, respondent had been able to lease the property for a four year term at $10 per month, the terms of the lease further providing the lessee was to expend a minimum of $300 to repair the property. Respondent had executed this lease under authority of an order from the county court. There was a total lack of any other evidence tending to show mismanagement of the estate. Absent a showing of fraud in the procurement of the order from the county court, petitioner's argument for removal of respondent as guardian upon this ground is devoid of merit.

The principal contention is that, as the natural father, petitioner has prior right to guardianship and custody of these children as against all other parties. The petitioner's argument is based upon the oft-announced rule that a parent has the prior right to custody and control of a child in the absence of a showing of unfitness, which must be positive and not comparative, and the fact that a child may be contented and better cared for elsewhere by a third person is insufficient to deprive a parent of the right to custody. See Goertzen v. Goertzen, 194 Okl. 207, 148 P.2d 982; In re Guardianship of Hight, 194 Okl. 214, 148 P.2d 475; Ex parte Harley, 207 Okl. 71, 247 P.2d 508; House v. House, 207 Okl. 238, 249 P.2d 113.

Much is made of the argument that to divest a parent of custody it must be shown that his condition in life, character and habits disclose that provision for a child's ordinary care, comfort, or the intellectual and moral development reasonably cannot be expected from the parents' hands. Upon this basis it is urged that petitioner's former life must be disregarded, and the issue determined in view of his conduct and attitude at the time of the trial. Thus petitioner concludes that because there was evidence to show petitioner had changed his way of life, was economically able to care for these children, and intended to provide better living accommodations for his family, it was incumbent upon the trial court to recognize his prior right as a parent and grant him custody.

Extended discussion and analysis of the decisions cited and relied upon by petitioner as announcing the applicable and controlling rule is unnecessary. We are of the opinion that a further principle of law, based upon statute and unvaryingly applied in prior decisions, is decisive of the issue herein presented.

In the recent case of Ex parte Hudspeth, Okl., 271 P.2d 371, we considered an analogous, though less aggravated situation. In that case the contention was made that the statute, 10 O.S.1951 § 5, gave the surviving natural parent absolute right of custody, as opposed to the maternal grandparent. And, likewise, the argument was advanced that where there was evidence establishing that the parent was a fit person, economically able to care for the child, that the issue had to be determined solely upon the basis of the rule as announced in such cases as In re Hights' Guardianship, supra.

In the Hudspeth case, supra, we declined to accept as controlling the rule contended for, and pointed out that in such cases there are two valid reasons which preclude application of the rule urged. One such reason is stated explicitly in the statute, 30 O.S.1951 § 11(1). The second reason appears in Taylor v. Taylor, 182 Okl. 11, 75 P.2d 1132, cited in the Hudspeth case, supra. Both of these reasons are founded upon the principle, expressed in the terms of 30 O.S.1951 § 11, that deter-

742

mination of child custody, or guardianship matters, must be guided by what is best for the child in respect to temporal, mental and moral welfare.

■ Although charitably omitting comparison between petitioner and respondent herein relative to matters concerning the childrens' temporal, mental and moral welfare, as reflected by this record, we necessarily conclude that the trial court was correct in the conclusions made and judgment entered thereon.

Judgment affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, HALLEY, BLACKBIRD and JACKSON, JJ., concur.