## MORRIS v. MORRIS.

No. 9738—Opinion Filed April 26, 1921.

(Syllabus.)

### 1. Divorce—Custody of Child.

Under section 4384, Rev. Laws 1910, as governed by the rules prescribed in section 3531, a court, in awarding the custody of a minor child, must be guided first by what appears to be for the best interests of the child, in respect to its temporal and its mental and moral welfare. In deciding what is for the best interest of the child in respect to its temporal, mental, and moral welfare, a court should well consider the influences and protection afforded by a parental affection, if such be manifest, and should not allow mere sordid wealth alone to weigh against a parent's love.

### 2. Same—Decrees—Modification.

Decrees as to the care and custody of a minor child are rarely made final, but may be modified from time to time to meet the requirements of the child's welfare.

### 3. Same.

The decree awarding the custody of a child to her mother's parents, who were adjudged to be fit persons, rather than to her father, who was adjudged to be an unfit person, having been made nearly four years ago, the child being then only four years of age, will not be reversed now and custody awarded to the father, this court being without knowledge as to what changes have since taken place, and having no knowledge as to what conditions exist at this time, but such decree will be allowed to stand, subject to such modifications as present conditions and the child's welfare may require.

Error from District Court, Pontotoc County; Geo. C. Crump, Assigned Judge.

Petition by Thomas W. Morris for modification of decree awarding custody of minor child to Rebecca Morris. From decree against plaintiff, he brings error. Affirmed.

Robert Wimbish and W. C. Duncan, for plaintiff in error.

W. F. Schulte, P. Mounts, and John E. Williams, for defendant in error.

HARRISON, C. J. This is an appeal from a decree awarding the custody of a child. It appears that in October, 1916, a decree of divorce was granted to Rebecca Morris from her husband, Thomas W. Morris, plaintiff in error, and the custody of their minor child, Marjorie, then about three years of age, given to the mother. In August, 1917, the father, Thomas W. Morris, petitioned for a modification of the decree, and asked for the custody of the child himself. The mother and step-father of the child's mother, that is, the maternal grandmother and step-grandfather of the child, had her actual custody and care at the time this action to modify decree was brought. The mother of the child, in the meantime, had married again, and moved to Texas. The father of the child was living with his own mother on a farm.

The court, after hearing the testimony, made, among others, the following finding and order:

"The court finds that the little girl in controversy was born in the home of Mr. Bohanan and his wife, who have had the expense and care of her keeping up to date, or until the order was made sometime ago delivering her to the defendant, and that the attachment has grown very strong in the mind and heart of Mr. Bohanan for the little girl, and the court is of the honest opinion that Mr. Bohanan and his wife are very honorable people, God-fearing people, and that they are able from a moral standpoint and a financial standpoint to give this little girl the training and education she ought to receive, and from the disposition of the plaintiff and the defendant fighting and quarreling and keeping up an uproar the court is of the opinion that if this child is put in the home of Mr. Bohanan and her home settled there, it will be for the best interest of the little girl, and the court will so order and award the child to Mr. Bohanan."

From this decree, the father, Thomas W. Morris, appeals upon three propositions, viz.:

"(1) That under the law the court cannot take the custody of a minor child from its father and give it to a stranger.

"(2) That the court erred in admitting hearsay testimony which tended to show the father's willingness for the child's maternal grandparents to have its custody.

"(3) That the court erred in declining to make findings of fact and conclusions of law upon request of plaintiff in error."

Upon the first proposition, plaintiff in error relies upon section 4368, Rev. Laws 1910, which provides:

"The father of a legitimate unmarried minor child is entitled to its custody, services and earnings; but he cannot transfer such custody or services to any other person, except the mother, without her written consent, unless she has deserted him, or is living separate from him by agreement. If the father be dead, or be unable, or refuse to take the custody, or has abandoned his family, the mother is entitled thereto."

Possibly plaintiff in error overlooked section 4384, Rev. Laws 1910, which provides:

"The husband and father, as such, has no rights superior to those of the wife and mother, in regard to the care, custody, education and control of the children of the marriage, while such husband and wife live separate and apart from each other, and when they so live in a state of separation without being divorced, the district court or

judge thereof, upon application of either, may grant a writ of habeas corpus to inquire into the custody of any minor unmarried child of the marriage, and may award the custody of such child to either, for such time and under such regulations as the case may required. The decision of the court or judge must be guided by the rules prescribed in section 3331, in the chapter on 'Guardian and Ward.'"

The section 3331 referred to in the above quotation provides:

"In awarding the custody of a minor, or in appointing a general guardian, the court or judge is to be guided by the following considerations:

"First. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of sufficient age to form an intelligent preference the court or judge may consider that preference in determining the question.

"Second. As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but, other things being equal, if the child be of tender years, it should be given to the mother; if it be of an age to require education and preparation for labor or business, then to the father."

We would direct attention to the latter part of section 4368, supra, which provides: "If the father be dead, * * * or has abandoned his family, the mother is entitled thereto."

It appears from the record that the decree of divorce and award of custody of the child was granted to the mother primarily upon the ground of abandonment by the father.

Under section 4384, supra, "the father, as such, has no superior rights to those of the wife and mother," etc.

It is provided in section 3331, supra, that in awarding the custody of a child the court or judge must be guided by what appears for the best interest of the child, in respect to its temporal, mental, and moral welfare. Thus the Legislature has enacted into statute law a most benign principle, one that has long been recognized and followed by our courts of justice. It is a principle which underlies good citizenship, it is a duty which government itself is obligated to discharge toward a child, and, upon the degree of fulfillment of such duty depends the benefits which the government may derive from a good citizen or the detriment it may sustain from a bad one. See Simpson on Law of Infants, chap. 8, pages 129 to 151; Tyler on Infancy and Coverture (2nd Ed.) page 277. 2 Kent's Comm. 205; Hurd on Habeas Corpus, 528; Ex Parte Adams, 67 Oklahoma, 168 Pac. 1004.

Hence the court not only had authority to do what it did, but it was its plain statutory duty to do what it did, if the facts, circumstances, and conditions affecting the child's interest and welfare warranted the court's conclusions. Therefore the first proposition is not well taken.

As to the second proposition, viz., that the court received hearsay testimony tending to show the father's willingness for the child's maternal grandparents to have its custody, we are unable to see where such testimony had any bearing on the court in reaching its conclusions. The only testimony in this regard, complained of in plaintiff in error's brief, is the testimony of the child's mother, which is as follows:

"Q. Mrs. Morris, did you receive any information that Mr. Morris would be willing for the Bohanans to have this child? A. Yes, sir. Q. From whom did you receive the information? A. Mrs. Smith. Q. Where does Mrs. Smith live? A. Fitzhugh."

It does not appear from the record nor from the decree that this testimony had the slightest influence upon the court's decision. It may have been introduced, as plaintiff in error contends, for the purpose of showing his willingness for the child's grandparents to have its custody, but this suit was prompted by the plaintiff's desire to have the custody of the child; the whole suit revolved around his desire for the child's custody, and his unwillingness for its grandparents to have its custody. Under the entire record there could not have been the slightest doubt of the plaintiff's desire for the custody of the child. The issue before the court was not whether he wanted the custody of the child, but whether he was a fit person to have its custody; hence the above contention is without merit.

As to the third proposition, "that the court erred in not making findings of fact and conclusions of law," the record discloses the following:

"By Mr. Wimbish: If the court is going to decide against us, we want findings of fact and conclusions of law.

"By the Court: The court would have been glad to make his findings of fact and conclusions of law had there been a request as by law required, but no request was made of the court to find the facts and conclusions of law until the court indicated he intended to give the child to Mr. Bohanan and his wife. * * *"

The above statement is a part of the judgment and decree of the court. The reasons above given by the court are sufficient in themselves to answer the contentions which plaintiff in error makes as to his rights

under section 5017, Rev. Laws 1910, especially when said section is construed in connection with sections 4791 and 6005, Rev. Laws 1910. But as a matter of fact the court did make specific findings of fact as to wherein the welfare of the little girl lay and as to the fitness of Mr. and Mrs. Bohanan to protect and promote her welfare, and as to the unfitness of either parent to have her care and custody, and upon such findings decided as a matter of law that the custody should be awarded to Mr. and Mrs. Bohanan, and so ordered.

From a review of the entire record, we do not feel justified in saying that the trial court erred in its judgment. The court heard all the testimony, saw all the witnesses, and was better acquainted with the circumstances than we, and was better able to properly adjudge the facts than we are upon the bare record. Hence we are unable to say as a positive matter of right that the decree should be reversed.

Reference is made in plaintiff's brief to the question whether financial abilities should control a court in decisions of this character, and in allowing the decree to stand for the present we are not to be understood as inclining toward the idea that wealth alone should control a court in determining the care and custody of a child, nor do we believe the trial court was influenced in any degree by such idea. We are fully aware that often a child may be far happier, its life brighter and purer, and its general well-being far better subserved amid humbler surroundings than amid luxury and wealth. Often the brightest minds, the loftiest ideals, the noblest characters, and purest lives are developed amid the humblest of surroundings, while the same attributes are as often dwarfed and blighted by the morbid influences of luxury and wealth. Happy lives and good men and women are not made by sordid wealth alone, nor should money alone be put in the scale against a parent's love for its child in weighing a question of this kind. Parental affection is a child's richest heritage, it is nature's shield against harm to the child, and should be strongly weighed against before its happiness and the moulding of its life and character be consigned to others. These influences should receive careful consideration in deciding what is best for the child; its happiness, its actual weal, mentally, morally, and spiritually, being the thought which should guide a court in selecting its keepers. For these reasons decrees of this character are rarely made final, but may be modified from time to time to fit the requirements of the child's welfare.

The decree in this case was rendered some four years ago; the child is now about eight years of age; conditions may have so materially changed since the decree was rendered that a modification thereof may now be proper, possibly necessary for the child's good. If such be the case and application should be made, a court of justice would not fail to make proper modifications of the order. But, upon the record before us, not knowing what the present conditions may be, not knowing whether the parties are now living nor what changes may have taken place, we do not feel justified in reversing the decree, but will permit it to stand subject to such changes as the child's best interest may demand should further application be made.

Decree affirmed.

KANE, J., dissents; all the other Justices concur.