**Fritz JAHN, Plaintiff in Error,**
**v.**
**Lina JAHN, Defendant in Error.**

**No. 36216.**

Supreme Court of Oklahoma.

Oct. 12, 1954.

Rehearing Denied Nov. 16, 1954.

Clay M. Roper, Oklahoma City, for plaintiff in error.

John Connolly, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

Plaintiff in error's appeal is from the judgment entered in a divorce action instituted against him, as defendant, by defendant in error, as plaintiff. The parties will hereinafter be referred to by their trial court designations. By said judgment, plaintiff was granted a divorce, and a division of the parties' jointly acquired property was effected. Defendant's principal complaint about the decree concerns the latter.

As no one, either court reporter or stenographer, took down or transcribed the evidence, we are dependent for the facts upon so-called narrative statements setting forth (perhaps largely from memory) their respective versions of the evidence, made and filed by the parties' attorneys subsequent to the decree, upon the decree itself, and upon the remarks of the trial judge recorded at a hearing upon the suggestion of amendments to the case-made.

As concerns the principal issue here involved, the evidence, in so far as undisputed in the attorneys' respective narratives, appears to have been substantially as hereinafter related. Plaintiff and defendant are 58 and 57 years of age, respectively. They had two children, born in 1930 and 1931, respectively. Since the couple came to Oklahoma City in 1926, they have both been employed more or less regularly. Plaintiff's salary as a butcher in the market operated by his sister's family, and at his present job with a seed company, has averaged between $35 and $60 per week. The first real estate the couple acquired in this City was equities in residences on Northwest 25th Street and in the sixty-seven hundred block on Northwest 10th Street. Later they sold these and applied the proceeds of said sales to the purchase of their present home which is situated at 6406 Northwest 10th Street, and includes one and one-fourth acres. This purchase was made in August, 1949. To make it, the couple obtained a loan of $5,000 from a local building and loan company, to be repaid at the rate of $53.58 per month. At the time of the trial, there was a balance due on this loan of $3,562.02, secured by a first mortgage on the property. Since acquiring it, the parties have enlarged and made certain improvements on the residence to render it suitable for a rest home for aged persons; and plaintiff has made a business of keeping such persons, which was continuing at the time of the trial. According to plaintiff's testimony, said property's total market value is between $12,000 and $13,000, while defendant testified it was worth between $15,000 and $16,000. Other than it, the couple have an old Ford automobile, worth $100, and household goods worth $750, in addition to a power mower and hedge trimmer whose values are not shown. Other than the balance due on the home loan, the only indebtedness shown to be owed by the parties, or either of them, is a balance of $213.36 due on an attic fan, $46 due on a dog house, $120 due the Fidelity National Bank, and $1,700 said to be due defendant's sister.

In its judgment, the trial court gave the home to the plaintiff wife and decreed that she pay the indebtedness on it, on the attic fan, and on the dog house. To defendant, the decree awarded the auto and $2,000 in cash, payable over an extended period, and secured by a lien on the home. On the other hand, it required him to pay the debt due Fidelity National Bank and made him responsible for any necessary payment to, or settlement with, his sister of the $1,700 "claimed to be" due her. Also, he was required to pay plaintiff's attorney a fee of $100, in addition to the $40 he had paid earlier in the litigation, together with court costs, which are said to be $40.

In the present appeal, defendant first contends that the above-described division of money and property is out of proportion to his entitlement. He presents a list or inventory showing the value, or monetary equivalent, (according to the testimony) of the parties' respective assets and liabilities, as apportioned to them in the decree, in an attempt to show that said division was unjust and inequitable and left him a net benefit of only $100 from the action, while plaintiff obtained net assets worth $8,205.62, according to her evidence, or $11,205.62, according to his. Counsel concedes that the "equitable" division of property parties have jointly acquired during their marriage, prescribed by Tit. 12, O.S.1951 § 1278, to be made in such cases, does not necessarily mean an *equal* division. He also concedes that in such division, the divorce court is allowed wide discretion and latitude; that it may consider, among other things, the relative efforts put forth by the respective parties in acquiring it; and that said court's judgment in the matter will not be disturbed on appeal unless clearly against the weight of the evidence. Logan v. Logan, 197 Okl. 88, 168 P.2d 878; Greer v. Greer, 194 Okl. 181, 148 P.2d 156; Smith v. Smith, 169 Okl. 305, 36 P.2d 886.

From the attorneys' respective versions of the testimony incorporated in the record in lieu of a transcript, it is impossible for us to arrive at any independent, reliable and unequivocal conclusion as to one of the above mentioned factors. It concerns the relative efforts of the two parties towards enabling their acquisition of the property, on which point the attorneys' statements are rather conflicting. According to the attor-

ney for the defendant, "he spent all of the money he made in support of his family *. * *". On the other hand, plaintiff's counsel stated plaintiff testified that defendant "never throughout the years of the marriage gave her any money, that she did not know what he did with his money. * * *; that while employed as a butcher he usually brought home the meats, and throughout the marriage has furnished at least part of the groceries; that during the marriage a good many of the things that were bought, were purchased on the payment plan, and that she was always required to make the payments out of her separate earnings."

■ A similar conflict in the attorneys' versions of the testimony concerns the $1,700 said to be due defendant's sister. According to defendant's version, the couple borrowed this money from her "for the purpose of purchasing" their home and "for the purpose of keeping and equipping said residence for a convalescent home; * * *". According to plaintiff's version, however, no part of this money was borrowed by her, but was obtained by defendant from his sister "for the purpose of going into the nursery business; * * *". Which of the two parties did actually borrow the money does not positively or unequivocally appear. Nor is there any such proof as to who spent it, or for what. It is a substantial enough sum, however, that if it cannot correctly be included in any inventory of the respective party's assets and liabilities, after the court division, the $2,000 in cash and the automobile thereby awarded defendant, less the bank debt of $120, does not compare nearly so unfavorably with the net assets awarded plaintiff which (according to her version) have a total value of $8,205.62, as when that $1,700 item is included. As to this item, the remarks of the trial judge at the aforesaid hearing on amendments to the case made are somewhat enlightening, and, are in part as follows:

"* * * I did find very specifically that so far as plaintiff, was concerned, she owed no part of it.

\* \* \* \* \* \*

"I said that was his obligation.

\* \* \* \* \* \*

"I feel under all this testimony * *

I was very liberal to this defendant in granting a judgment for $2,000, and in view of the circumstances as proven in the numerous hearings we had in this case, * * * I feel like the plaintiff was entitled to credit for most of the frugality and making the savings, that in as much as there was an equity there in the property of $7000 or $8000, there wasn't any reason, as I viewed the testimony here that it should be divided fifty-fifty * * *."

Viewing (as we must) the trial court's judgment as a finding of every fact necessary to support it, and according it the weight and presumption of correctness to which it is entitled under our rules of appellate review, we have no choice, in view of the total absence of any transcript of testimony and the conflict in the respective attorney's versions of it, but to conclude from said judgment and the trial court's above-quoted remarks that the evidence at the trial was of such character as to support a conclusion not only that the aforesaid $1,700 was borrowed by defendant individually from his sister, but that it has no place or significance in a determination of the merits or demerits of the court's division of the couple's jointly acquired property.

■ Defendant's counsel emphasizes the fact that his client is 57 years old and that his expectancy of earning $60 per week is now limited or comparatively short, but the evidence he relates indicates both parties are in good health; that plaintiff is a year older than defendant and has no apparent means of livelihood other than keeping old people in her home, from which she has a gross income of $35 per week. From her income, she must retire the indebtedness on the home at the rate of $53.58 per month, in addition to paying taxes, insurance and maintenance costs, and to paying defendant the sum of $2,000. When looked at in this manner it certainly does not seem that, by the court's decision, plaintiff benefited excessively or in any great disproportion to defendant, nor on the basis of what we can glean of the evidence, can we say with any degree of certainty or conviction that the trial court exceeded the discretion or "lati-

tude" allowed trial courts in such matters under the rules hereinbefore referred to.

In his brief, defendant sets forth three other propositions but none of them deals with any new issue necessary for decision herein, except one which he supports neither by any reference to the evidence, citation of authority, or argument, other than the bare assertion that there was not sufficient evidence to "justify the court in granting a divorce." The decree does not specifically reveal the ground or grounds upon which the divorce was granted. The grounds alleged in plaintiff's petition are as follows:

"4. Plaintiff further states that for the past several years said defendant has been guilty of extreme cruelty toward this plaintiff and that his conduct has completely destroyed the marital relation between this plaintiff and said defendant, has rendered cohabitation intolerable, has destroyed the happiness of the parties and legitimate aims of matrimony, has grievously wounded the mental feelings and destroyed the peace of mond of the plaintiff so as to place her in constant fear of bodily harm.

"5. Plaintiff further alleges that defendant has been guilty of gross neglect of duty, in that although he is an able bodies man, gainfully employed, and earning the sum of approximately $65 per week, he fails and refuses to furnish his family the bare necessities of life, and the plaintiff herein is compelled to take in and nurse invalid persons in order to sustain herself and her children."

All that the record discloses (in addition to that already related) about the evidence approximating relevancy to this feature of the case is found in the following excerpts of the respective attorney's narrative statements. In plaintiff's counsel's statement, it is said:

"She testified * * * that throughout the marriage it was necessary that she work, and that she did work as a nurse at the Polyclinic Hospital and other places for many, many years:

"The plaintiff testified that it was through her efforts that the children were clothed and fed and sent through school;

"The plaintiff testified that the defendant frequently got mad and left home and went to his sister's house; that he at no time during the marriage has assumed the full responsibility of a husband, but left the care and future of the minor children to the plaintiff.

"The plaintiff testified that she has worked throughout the marriage, long hours, in an effort to keep the family together.

"The plaintiff testified that the defendant contributed to the groceries, but that she had always made payments on the property out of her earnings as a nurse; that at the time of the trial and for a long time prior thereto that she was taking old women into her home and nursing them for a fee in order to support herself and maintain the payments on the property;

*     *     *     *     *     *

"Plaintiff testified that the never throughout the years of the marriage gave her any money, * * *."

In defense counsel's narrative it is said:

"That previously, about a year before the institution of this divorce suit, a prior divorce suit was filed by his wife, and under the suggestion of the court, he (defendant) has done everything he could to carry out the terms of the reconciliation of the parties; * * *."

■ On the basis of what we are thus told concerning the evidence, and in view of the especially superior position of the trial court (in a case recorded for appeal as was this one) to know the evidence and to see its full scope and determine its maximum weight, we are unwilling to say that said court erred in granting the divorce. For the foregoing reasons the trial court's judgment is affirmed.

JOHNSON, V. C. J., and CORN, DAVISON and WILLIAMS, JJ., concur.