Ada Mae ADAMS, Plaintiff in Error,

v.

Billy Joe ADAMS, Defendant in Error.

No. 36955.

Supreme Court of Oklahoma.

Feb. 14, 1956.

Rehearing Denied March 20, 1956.

832

Murphy & Booth, Oklahoma City, for plaintiff in error.

King & Wadlington, Ada, for defendant in error.

BLACKBIRD, Justice.

In the present appeal, plaintiff in error, hereinafter referred to as "Movant", complains of error in an order or judgment entered by the trial court April 6, 1955, overruling her motion to modify a previous order of said court with reference to the custody of Bobby Joe Adams, minor son, born of her marriage with defendant in error, hereinafter referred to as "Respondent." Said previous order entered February 16, of the same year, placed custody of the child, who at that time seems to have been between 5 and 6 years old, in his paternal grandmother, Mrs. Sybil Collins, during his minority, "or until * * * further order of the court * * *".

The particular child custody proceedings here involved, were had in the parties' Pontotoc County divorce action instituted by respondent, in which his wife, the movant, was granted, on her·cross petition, a divorce and the care and custody of, and support for, the child, with "reasonable" visitation rights in respondent, by decree of January, 1953. Almost three weeks afterwards, said decree was modified to give respondent custody of Bobby Joe one week out of each month, during which week he was to be kept in the home where his grandmother, Mrs. Collins, lived near Ada, Oklahoma. This order further provided that for this monthly exchange of the child, respondent would go to Oklahoma City, where movant had taken up residence, transport him to Pontotoc County, and then return him to movant at the end of the week.

In June, 1954, movant drove her automobile, on what she termed a "vacation" trip, to California, to visit relatives. She took with her three male ex-convicts, one of whom was a family friend, who had lived in their home when he was a minor, and was then living with her sister and brother-in-law, Mr. and Mrs. Elmer Miller, in Capitol Hill, in the southern part of Oklahoma City. Before leaving Oklahoma City she left Bobby Joe with the Elmer Millers, and, when later that month, respondent came to Oklahoma City to take him to his mother's residence in Pontotoc County for his monthly visit and learned that movant had departed and left the child, as aforesaid, he returned to Ada, obtained an order from the trial court there authorizing him to have temporary custody of Bobby Joe; and in compliance with said order, the child was taken from the Miller's home in Oklahoma City to Mrs. Collins' residence near Ada, and still remains there.

When movant returned from California, after about three weeks absence from Oklahoma, she commenced her efforts to obtain modification of the court's previous orders taking Bobby Joe's custody from her. The first of her motions for this purpose was filed July 23, 1954; and, after a hearing held thereon August 4, 1954, the court entered an order placing temporary custody of Bobby Joe in Mrs. Collins, and, at a later hearing held February 16, 1955, changed Mrs. Collins' temporary custody to so-called "permanent" custody. Later, movant filed the motion to modify, which was denied by the aforesaid April, 1955, judgment. The principal ground for modification asserted in this latter motion was that there had been a change in "the condition of all of the parties hereto" since entry of the previous order.

At the trial, or hearing, held thereon, movant showed by her testimony, and that of other witnesses, that she was then employed in an Oklahoma County restaurant as a waitress, at a salary of $30 per week, which, with the addition of tips and extra table waiting for two men's civic clubs at night (which latter she planned to quit if given custody) totaled "from sixty to seventy dollars a week, * * *". The assistant pastor of a church in Capitol Hill testified that movant had been attending his church for about five months, having started in November, 1954, and was "converted" in January, 1955, and baptized the following February 13th. Among other things, he also testified, in substance, that (in his comparatively short acquaintance with her) he had formed the opinion that movant is of good moral character, and he considers her fit to have custody of the child. (He ad-

mitted, however, that he had never heard that movant had ever been linked with any crime, and when informed of it by opposing counsel, stated that this information did not alter his opinion of her). It was further shown that, since her return from California, movant had resided in the home of the Elmer Millers', which, at that time, was a three-bedroom brick residence on Southeast 55th Street, in or near Oklahoma City; that said home is near a school Bobby Joe could attend; that Mr. Miller is a building contractor; that he and Mrs. Miller have a 10-year-old daughter and an 11-year-old adopted son also living in the home, besides movant; that it is agreeable with them for movant to bring Bobby Joe to their home to live; that Mrs. Miller has quit her job so that she can look after Bobby Joe when movant is working, especially in the mornings, as movant's working hours in the restaurant are from 6:00 a. m. to 2:00 p. m.; that it is contemplated that Bobby Joe will share with the Miller's adopted son, the latter's bedroom in their home.

At said trial, it was revealed that after movant went to California with the three ex-convicts, as hereinbefore mentioned, these three men committed a burglary there, using movant's automobile; that they were convicted and sent to prison; and that when movant wanted to return to Oklahoma (after learning by long distance telephone from her sister, Mrs. Miller, in Oklahoma City, that during her absence Bobby Joe had been taken to Mrs. Collins' residence in Pontotoc County) she learned that her auto was not available for the trip because California authorities had taken it into custody. She therefore had to return to Oklahoma City without it, but was successful in getting it released on a subsequent trip there in December, 1954.

Mrs. Collins' testimony was to the general effect that Bobby Joe would be better off continuing to reside with her, and her mother, Mrs. Roper, at their rural home near Ada, than in the Millers' home in Oklahoma City because of environmental and other reasons; that when the boy starts to school she will drive him, for that purpose, back and forth to Ada, a distance of only 8 miles; and that movant is welcome to visit Bobby Joe in her home at any time.

On the other hand movant testified, without contradiction, that the home where Mrs. Collins lives is only a five room house and that besides them, respondent, his present wife, and their two children also reside there.

In his order, at the close of the hearing, refusing to change the child's custody, the trial judge specifically found that "it is to the best interest of Bobby Joe Adams that he remain in the custody of Mrs. Sybil Collins his grandmother." Thereafter, upon the overruling of her motion for a new trial, movant lodged the present appeal.

■ In urging that the trial court's order, or judgment, is not sustained by sufficient evidence, is contrary to law, and constitutes an abuse of discretion, movant points to the preference, for purposes of child custody, which our statutes give a parent over others, including grandparents; and, to the preference, as between parents, which is given, in the case of a child of tender years, to a mother over a father "other things being equal." Tit. 30, O.S. 1951 §§ 11 and 12, subd. 1. Her counsel asserts, in substance, that upon consideration of the matters referred to, and principles applied, in Marcum v. Marcum, Okl., 265 P.2d 723, it is clear that the trial court erred in entering the judgment here involved. Counsel concedes that in the final analysis, the best interest and welfare of the child is the paramount consideration in cases of this character, but they cite a quotation from Morris v. Morris, 81 Okl. 222, 198 P. 70, to the effect that parental affection is a child's richest heritage, that it is nature's shield against harm, and should "be strongly weighed against" before the child's happiness and the molding of its life and character should be consigned to others. They also include in their brief citations from Marcum v. Marcum, supra, and other cases, to the effect that before the courts will deprive a mother of custody of her child of tender years, it must appear clearly and conclusively that the necessity for so doing is imperative, and that she is not a fit and

proper person to be so entrusted, by proof of "special" unfitness, i. e., that her condition in life, or character and habits are such that provisions for the child's ordinary comfort and contentment, or its intellectual and moral development, cannot be reasonably expected at said parent's hands. Their position seems to be that, in this case, the evidence showed that Bobby Joe's living conditions in the Miller home with his mother, would at least be equal, to those in the home where he is residing with Mrs. Collins and the others living there; and that the evidence with reference to his movant mother's fitness was not sufficient to "strongly weigh against" the benefits inherent in the mother love he would receive in her custody. It is pointed out, that in his judgment, the trial judge made no specific finding of movant's unfitness and, in the remarks he made from the bench previous to rendering said judgment, he indicated that he did not "feel like the father is a fit person for the child to be living with, * * ". However, we think that even assuming that the hereinbefore quoted specific finding with reference to Bobby Joe's "best interest" in the judgment complained of, cannot be deemed to include a further finding of movant's unfitness under the rule governing our view of trial court judgments, see Jahn v. Jahn, Okl., 276 P.2d 225, and other cases cited in Vol. 2A, Okl.Dig., Appeal and Error, ▓▓▓▓▓▓ the trial judge's oral statements in announcing said judgment as incorporated in the case-made, Appeal of Warwick's Estate, Okl., 291 P.2d 346; Miller v. Young, 197 Okl. 503, 172 P.2d 994; Am.Jur., Vol. 53, "Trial", sec. 1129, Note 11, Vol. 3, "Appeal and Error", sec. 595, Note 3, strongly indicate his opinion that he deemed her unfit for the child's custody. While all of the movant's past conduct is not before us, nor all of the evidence about her character (alluded to in those remarks) that the trial judge had previously heard in the case (as to which we are in somewhat the same position shown in Jahn v. Jahn, supra) the order he entered, after hearing it, making "permanent" Mrs. Collins' temporary custody of Bobby Joe is not now before us. The only question here is: Had the parties, and their situation (as the trial judge's re-

marks and the evidence have indicated they were at that previous time) so changed, that said order should have been modified at the April, 1955, hearing? It is obvious that the trial judge did not think they had; and that he quite frankly did not think that the character and conduct of movant, and the arrangements she had made for the child to live with her, were yet sufficiently changed from what they had been, to warrant a change in custody, upon consideration of the child's best interests.

▓▓▓ Where a mother has, by her conduct, forfeited her preferential right under the law to the custody of her child, and the trial court has performed its duty to make such provisions for the child as will best suit its needs, this court will not reverse the trial court's action, even though its order may, from a parental standpoint, seem "harsh." See Tobin v. Tobin, 89 Okl. 12, 213 P. 884, 890, where we said that society has such an interest in children that courts of equity are vested with power, in the children's interest, and that of society, "to prevent their youthful lives being poisoned with the conduct, even of their mother * * ". And see Ex parte Hudspeth, Okl., 271 P.2d 371, 373, where we acknowledged the importance of a natural parent's right, but recognized that such right "is not * * * absolute * * * and is qualified by considerations affecting the" child's welfare.

We do not think it strengthens movant's case to point out, as her counsel do, that the trial judge regarded the respondent father (like the movant) unfit for the child's custody. He is not the one given such custody and there is no evidence in the record as to what kind of a life he has led since his divorce from movant and re-marriage. The argument here that the child's coming into contact with him in the same house in which the grandmother custodian lives, as we said of a similar argument in Phillips v. Phillips, Okl., 267 P.2d 597, 598, "is not persuasive." There was no evidence to show, despite such possibility or probability of contact, that the child's environment there will be undesirable in the respects it was shown to have been while he was in movant's custody. The cases which movant urges as authority for our reversal of the trial court's judgment in-

cluding Marcum v. Marcum, supra, the principal one, are distinguishable from the present case. The most vital distinction between the cited case and this one is that there the evidence showed that the mother was a fit and proper person to have the minor's custody.

We have thoroughly examined the evidence, and, though some parts of it tend to show that movant may have repented her former life and decided to reform, see Roberts v. Biggs, Okl., 272 P.2d 438, still, on the paramount issue of whether the best interest of Bobby Joe would be served by changing his custody at this time, Nasalroad v. Gayhart, 208 Okl. 447, 257 P.2d 299, the evidence, as a whole, is conflicting. In this situation, the determination is properly one for the trier of facts, and its judgment will not be disturbed, Chapman v. Walker, 144 Okl. 83, 289 P. 740, unless it is so clearly against the weight of the evidence as to show an abuse of discretion. Application of Boyd, Okl., 274 P.2d 399; Lewis v. Sisney, 205 Okl. 599, 239 P.2d 787; Culbertson v. Jones, 201 Okl. 341, 205 P.2d 878; Blake v. Blake, 182 Okl. 123, 76 P.2d 904. One of the principal reasons why, under said rule of appellate review, such matters are left so largely to trial court's discretion, is their better position to appraise and weigh the evidence, as well as to determine what, under all of the circumstances with which they are familiar, will be for the best interests of the child. In addition to the cases cited, supra, see Morris v. Morris, supra, 198 P. at pages 72, 73; Culbertson v. Jones, supra, 205 P.2d at page 880. (We think the present case furnishes an excellent example of the practical wisdom and usefulness of this rule). On the basis of what the record shows concerning this prime consideration, we cannot say that the trial court's judgment constitutes such an abuse of discretion. Both its wording, and the law applicable to such orders generally, contemplates that it may be revoked, changed, and/or modified upon a proper future showing. Phillips v. Phillips, supra, 267 P.2d at page 598; Gaunt v. Gaunt, 160 Okl. 195, 16 P.2d 579; Morris v. Morris, supra.

Affirmed.