W. H. LAYDEN, County Judge, Plaintiff in Error,

v.

James M. MAY, Guardian of the Estate of Ben T. Galbraith, Incompetent, Defendant in Error.

No. 37907.

Supreme Court of Oklahoma.

May 26, 1959.

Arnote, Arnote & Bratton, McAlester, for plaintiff in error.

Fred W. Whetsel, McAlester, for defendant in error.

BLACKBIRD, Justice.

This appeal involves the disqualification of plaintiff in error, hereinafter referred to as respondent, to act as County Judge in the matter of the removal of defendant in error, James M. May, hereinafter referred to as petitioner, from his position as guardian of one Ben T. Galbraith, who is serving a life sentence after conviction for murder in the District Court of Pittsburg County during 1955. In August of that year, an action was commenced by the State on relation of the Court Clerk, as plaintiff, against Galbraith to recover the sum of $2,092.94 as the total amount of court costs that had been incurred in the murder case, which said costs were alleged to have been assessed against Galbraith, as defendant therein. Respondent's name appeared on said plaintiff's petition as its attorney, but the recovery therein sought was never obtained.

In the fall of 1955, the Veterans' Administration rated Galbraith as 100% disabled and incompetent, and awarded him disability compensation in the amount of $181 per month, retroactive to May 23rd of that year. During respondent's predecessor's tenure as county judge, petitioner was appointed guardian of Galbraith's estate and began receiving the aforementioned disability compensation benefits.

After respondent took office as County Judge in January, 1957, petitioner requested, by petitioner filed in the Galbraith guardianship proceeding, and therein obtained, by respondent's order, authority to pay certain debts that had been incurred by, or on behalf of, his ward, including certain sums Galbraith's mother had advanced for his use and benefit. When, more than a month later, the Court Clerk presented to petitioner, as Galbraith's guardian, a claim for the aforementioned $2,092.94 in court costs, petitioner refused to pay it on the ground that his ward's funds were restricted by law against use for that purpose. In March, 1957, said court clerk filed a formal application in the Galbraith guardianship proceedings, praying the court to compel the guardian to pay said claim. At the hearing thereon, petitioner appeared with his attorney and, besides denying the merits of said application, requested respondent to disqualify as judge in the matter. Respondent refused to disqualify, and ordered plaintiff to pay said claim out of his ward's

funds. Thereafter, petitioner lodged an appeal from said order to the district court. On May 28, 1957, the district court, after trial de novo, reversed or vacated respondent's aforesaid order directing petitioner to pay the court clerk's claim.

On May 29, 1957, a document was filed in the guardianship proceeding, bearing respondent's signature and the County Court's seal, and entitled: "Order For Hearing." Said order was directed at petitioner, charging him, among other things, with failure to file an inventory of his Ward's estate and with partiality and showing favoritism to "claims of creditors in the payment of certain debts, while at the same time ignoring the claims of other debtors and refusing to pay such claims * * *". The order related the above-mentioned filing of the guardian's petition for payments to his Ward's mother and others, and charged him with totally ignoring the court clerk's aforementioned claim for court costs and with refusing to either pay, or reject, said claim. The order directed notice to issue to petitioner to appear before respondent at 9 o'clock A.M., June 1, 1957, to show why he should not be removed as guardian of Galbraith's estate, and further stated that, if he did not so appear, his letters of guardianship would be vacated and another person appointed as Galbraith's guardian.

Two days later, or on May 31st, petitioner filed in said guardianship proceeding a pleading entitled "Application For Disqualification" in which he related some of the hereinbefore mentioned facts, and others concerning respondent's previous connection with Galbraith's prosecution and the the efforts to force payment out of Galbraith's funds (in violation of the legal restrictions against their use for that purpose) of the court costs incurred in petitioner's said Ward's prosecution, and charged that, by reason thereof, respondent had become disqualified in the matter of petitioner's removal as guardian, and should certify said disqualification so that the matter could be heard by a free and impartial special judge.

At the hearing on the disqualification application on June 1st, the matter was either continued for further hearing, or the respondent judge took his decision under advisement, until the afternoon of June 3rd. Shortly before noon on the latter date, petitioner's attorney went to the respondent judge's office and inquired whether or not he had "prepared" his "ruling" on the disqualification application. Respondent told him he had not, but that his "ruling would be that" he "would refuse to certify" his disqualification.

Later the same day, petitioner commenced the present district court action, seeking a writ of mandamus from said court to compel the respondent to certify his disqualification to preside, or act as a judge, in the matter of petitioner's removal as Galbraith's guardian. Petitioner's attorney immediately went to the district court room, where he called the District Judge's attention to the Application for the Writ, and, after the respondent had stepped into said court room, served formal written notice upon him that petitioner would apply for the writ that day; and obtained from said District Judge an order entitled "Alternative Writ of Mandamus." A pertinent part of said Order, or Writ, "commanded" the respondent "that immediately after receipt of" the Writ, he disqualify as "presiding County Judge" in hearing the removal of petitioner as Galbraith's guardian, or appear before the District Court on June 8, 1957, to show cause for his refusal.

The sheriff's service of said Writ on respondent did not occur until 3:10 o'clock on the same afternoon of June 3rd.

Before the hearing scheduled for June 8th in the Mandamus action, respondent filed two pleadings, the first of which was denominated "Motion to Quash Alternative Writ of Mandamus", and the second was entitled "Return of Alternative Writ Supplementing Motion To Quash." In both of said pleadings, respondent sought to make it appear that petitioner had already been removed as Galbraith's guardian when the "Alternative Writ" was served upon

him, by alleging that he issued the order removing petitioner at 2:15 P.M., on June 3rd, before being served with the writ at 3:10 P.M., the same day. In his said Return to the Writ, respondent further alleged:

"2. That the alternative writ was improperly issued for the reason that the petition or motion is not made upon an affidavit by plaintiff or his attorney and the issuance of the alternative writ is void.

"3. The alternative writ does not concisely show the obligation of this defendant to disqualify and it does not show his omission to perform same.

"4. The alternative writ should not have been issued because there is a plain adequate remedy in the ordinary course of law available to the plaintiff.

"5. The petition fails to show any facts substantiating the conclusion that this defendant is prejudiced.

"6. That this defendant is not prejudiced against James M. May, Guardian of the estate of Ben T. Galbraith, incompetent."

During the scheduled hearing and trial, June 8th, of the issues joined by the above-mentioned pleadings, petitioner's counsel, in an apparent effort to cure his petition of the defect alleged in paragraph "2" of the above-quoted Return, sought and—toward the end of the trial—finally obtained, permission from the court to attach thereto his client's affidavit that the facts alleged in said petition, and the exhibits attached to it, were true of his own personal knowledge.

After the evidence was all in, the Court entered its "Order" based upon specific findings of the issues in favor of petitioner, and directing issuance of a Writ of Mandamus against respondent "disqualifying him as presiding County Judge * * * for the purpose of hearing the matter" of petitioner's removal as guardian. From this Order and Judgment, the respondent judge has perfected the present appeal.

Under the first two of respondent's propositions for reversal, he complains of error in the issuance of the so-called "Alternative Writ." His complaint under his Proposition I, is that petitioner's application for such preliminary and temporary relief was not verified as required by Tit. 12 O.S.1951 § 1455. His complaint under his Proposition II, is that said Writ "does not concisely and distinctly show" any obligation on his part to certify his disqualification to act as judge in the proceedings to remove petitioner as Galbraith's guardian, and fails to show his omission to. do so.

In connection with the latter argument, he cites Tit. 12 O.S.1951 § 1459, in support of his statement that the Writ and Answer "are the only pleadings allowed in this type of proceeding * * *". This appeal, however, is not from the alternative writ, or any order (issuing, or accompanying, it) of a temporary nature, contemplated to remain in force and effect only until an order of a final, or peremptory, nature could be entered on June 8, 1957. The order and judgment of the latter character, and date, is the first, or earliest, one that can be effectively brought into question in this appeal and respondent does not show that error in any previous order of the trial court constitutes, or shows, error in the judgment herein appealed from, unless such error might conceivably have an indirect bearing upon respondent's position, under his Proposition III, that the matter of his disqualification to preside had become a moot question before entry of the peremptory, or presently appealed, order. In connection with the latter argument, respondent refers to the undisputed evidence at the trial that some 55 minutes or an hour before he was formally served (by the Sheriff's deputy) with a copy of the "Alternative Writ" he dictated to his secretary a so-called "minute order" removing petitioner from his position as Galbraith's guardian. There might be merit to respondent's argument if, or assuming without deciding, such order was valid and actually became effective before the respondent judge came under any legal restraint against entering

it. However, according to recitals in the journal entry of the order herein appealed from, setting forth the district court's findings, said court, at the time petitioner presented his application for the Alternative Writ in respondent's presence on June 3rd, directed respondent to take no further action in the matter of petitioner's removal until the scheduled hearing of June 8th. The record in this case contains no reporter's transcript, or other authentic proof, of all that was said and done in the aforementioned district court presentation, or hearing, of June 3rd, but respondent makes no claim that said court, on that occasion, gave him no such order or direction, oral or otherwise. We must therefore conclude that respondent was so directed. See Jahn v. Jahn, Okl., 276 P.2d 225, 227. The respondent judge makes no claim, and cites no authority, to the effect that the district court, by order or direction of June 3rd, could not validly, and effectively, stay the county court guardian removal proceedings until said district court could hold a hearing in its mandamus proceedings, at which to adjudicate any issue thereby presented, or thereafter raised, either jurisdictional or otherwise. There is no reason given in respondent's argument for not assuming that the district court had such power and could prevent, at least for the 5-day period between June 3rd and June 8th, an effective order from being entered by the county judge removing petitioner as guardian, and rendering any such county court order purportedly entered before that time a nullity. If said purported order was a nullity, then there can be no merit to respondent's argument that when the district court made its order of June 8th (the one herein appealed from) the matter of the respondent's disqualification had already become a moot question.

In view of the foregoing, and the fact that respondent makes no claim that the sole and only order and/or judgment, that is appealed from herein, is contrary to, or not supported by, the evidence, or is otherwise erroneous on its merits, said judgment is hereby affirmed.

WILLIAMS, V. C. J., and HALLEY, JOHNSON, IRWIN and BERRY, JJ., concur.

DAVISON, C. J., and WELCH and JACKSON, JJ., concur in result.