Edna Arlene LYNN, Plaintiff in Error,

v.

Wallace E. LYNN, Defendant in Error.

No. 42289.

Supreme Court of Oklahoma.

June 4, 1968.

Rehearing Denied July 16, 1968.

Blumenthal & Gray, Oklahoma City, for plaintiff in error.

Ogden, Ogden & Board, Guymon, for defendant in error.

BLACKBIRD, Justice.

This appeal involves the denial of the application of plaintiff in error, hereinafter referred to as "applicant", for a modification of a previous divorce decree in respect to the custody of the minor children, Nancy, Gary, Debra, and Karen, born of her marriage to the defendant in error, hereinafter referred to as "respondent".

Sometime previous to March, 1961, applicant was declared mentally ill, in Texas County, where she was living with respondent and the above named children. During that month she was committed to Western State Hospital, at Supply, Oklahoma. Thereafter, on March 11, 1961, she left said Hospital on convalescent leave, and went to Kansas City to reside, apparently without plaintiff's knowledge.

Thereafter, in July, 1961, the respondent, as "plaintiff", instituted divorce proceedings against her as Texas County District Court's Cause No. 10554. In his petition for divorce, on the ground of incompatibility, respondent also prayed for custody of the children. Thereafter, in September, 1961, respondent obtained an order in said proceedings granting him the children's temporary custody and restraining applicant from interfering with or molesting him in such custody. After the filing of other pleadings in Cause No. 10554, supra, an answer and cross petition was filed on applicant's behalf, in which she sought a divorce (on the alleged ground of "cruelty and gross neglect of duty"), and also the care and custody of the children, as well as support money for them, and her attorneys fees and costs.

Thereafter, in March, 1962, applicant's convalescent leave from Western State Hospital was formally terminated by a discharge therefrom.

Thereafter, in May, 1962, the court granted respondent a divorce and general custody of the children in Cause No. 10554, supra, but, for the three summer months of that year, placed them in the temporary custody of their maternal grandparents, Mr. and Mrs. Archie Williams of near Mammoth Springs, Arkansas, requiring the latter to post a bond to return the children by August 31, 1962. The children were not returned, and, in October, 1962, the bond was ordered forfeited. After enlisting the aid of a detective agency to locate the children, respondent found them in Kansas City with applicant and brought them back to his home in Guymon.

Thereafter, in November, 1962, respondent married his present wife, Pat, a widow with two sons, James and Tommy, who were then of the ages of 3 and 9 years, respectively. Respondent, his said present wife, and all six of the children have ever since resided in respondent's home.

Later, applicant moved to Oklahoma City, and in November, 1965, obtained an order from the County Court here formally restoring her to competency. The next month she purchased a home here; and, about six months later, or July 1, 1966, filed the application for change of custody involved herein. After an extended hearing thereon, the court, in August, 1966, denied, or "overruled", the application, but decreed that applicant could visit with the children one Saturday afternoon each month, for a period of not less than three hours, at a place to be designated by the

court later and before the first visit, without respondent and his present wife being present, but in the presence of an individual whose name would be supplied before the first visit.

After the overruling of her motion for a new trial, applicant perfected the present appeal and herein urges reversal of the trial court's order under two propositions. In reverse order, they are, in substance that there was "no reasonable evidence" in this case to justify withholding the children's custody from their natural mother, and that the trial court abused its discretion in the order complained of. (Although applicant's propositions are worded, as if the order involved here were one initially, or originally, "depriving" her of the children's custody, it will be seen from the foregoing narration, that it is not).

Applicant's brief is not altogether consistent in that some of its statements, and cited authorities, infer that she has custody of the children and is trying merely to keep it (a false premise that ignores her burden of proving changes of conditions warranting the trial court in taking custody from her former husband—in whom it was presumably correctly placed by the unchallenged divorce decree) while, under her second proposition, it contains a quotation from 174 Am.Jur., "Divorce and Separation", Sec. 839, a part of which is as follows:

"There must be a substantial change of the circumstances presented in evidence before the court may change an order of custody. There is no fixed standard to determine what constitutes such a substantial change of circumstances. The court is guided only by the rule of very general application that the welfare and best interests of the child are the primary concern in determining whether the order shall be changed; and even though there has been a substantial change of circumstances the court should not modify the order unless the welfare of the child will be promoted thereby. In other words the substantiality of the

change of circumstances is tested with respect to the child's welfare rather than the parents' welfare. * * *."

(Identical language appears in the newer edition, 24 Am.Jur.2d, "Divorce and Separation", sec. 820). This court has consistently recognized and applied the principles and considerations above referred to. See Morrow v. Morrow, Okl., 383 P.2d 24, Fletcher v. Fletcher, Okl., 362 P.2d 69, Siler v. Siler, Okl., 350 P.2d 510, Wills v. Wills, Okl., 349 P.2d 1, Price v. Price, Okl., 302 P.2d 772, 773, Jones v. Jones, Okl., 294 P.2d 304, 59 A.L.R.2d 651, and Adams v. Adams, Okl., 294 P.2d 831.

Applicant's arguments in this case are remarkably like those of the movant in the last above-cited Adams Case, and they must be treated substantially the same here, as there. Here the applicant, both in her "APPLICATION", and her evidence at the trial, seemed to rely heavily on the facts that she (in addition to the fact that she is the children's natural mother) now owns a comfortable home and has a three-hundred-and-fifty-dollar a month job as a trusted secretary to a member of one of said City's prominent families, who recommends her, to show the necessary change of conditions to justify the change of custody she sought. We think such changes, though undoubtedly reflecting an improvement in applicant's living conditions, do not, in and of themselves, show that the children's comfort and contentment or intellectual and moral development will be equally as well served in applicant's custody, as in respondent's present custody.

It is true that at the time of the hearing on the applicant's application, the ages of the children ranged from 10 years to 16 years, all except one being teenagers, and Karen, the youngest being what may be considered, under our statute, as a child "of tender years". But the overwhelming preponderance of the evidence tends to show that they are happy and content in the custody of their father, who has been a school teacher at Guymon for more than 10 years, and who, with his present wife, Pat, is actively engaged in church and

Sunday School work there. The uncontradicted evidence indicates that the children are leading active, healthy, and wholesome lives, that Pat is making them a good mother, and that there are no problems, affecting their intellectual and moral development, involved in their life and association with Pat's two sons by her former marriage. While it is perhaps true that the four minors, whose custody is involved here, would have more housing space in the applicant's present home, than they now enjoy in respondent's home, where they must share space with Pat and her two sons, for all that the evidence shows, this poses no important problems; and, judging by the testimony elicited from the family's neighbors and acquaintances, the minors' life in their present home is little, if any, less ideal than it could be, if all of the six children were siblings of the same parents.

On the other hand, the applicant, in her testimony at the trial, unabashedly revealed her bitter feelings towards the respondent, admitted that she had had difficulty in restraining herself from attempting to kill him, and, in effect, conceded that any attempt by her to visit the children in his presence would be potentially unpleasant, to say the least, and quite conceivably disturbing to the children. It may be reasonably concluded that it was because of the hazards to all concerned from any direct contact, or confrontation, between the natural parents of the minors involved, that the trial court's order concerning the applicant's visitation of the children contains the unusual features incorporated therein. Although the record contains no substantiation of applicant's charge (in one part of her testimony) that respondent "railroaded" her into the aforementioned mental hospital, it is evident that she unforgivingly feels that he did, and that she still bears a sharp grudge against him for this, and other things in the past, and has attempted, sometimes insidiously, and other times boldly, to destroy the children's confidence in, respect for, and contentment with, their father and his present wife. Also, applicant's admitted low regard for, and proven defiance, of any law, or court order that withholds from her the custody that she considers her natural right, does not augur well for the kind of training and example the minors might be furnished in her custody. In this connection, notice Sullins v. Sullins, Okl., 280 P.2d 1009, 1014.

As noted in Adams v. Adams, supra (cited in Tobin v. Tobin, 89 Okl. 12, 213 P. 884, 890) "society has such an interest in children that courts of equity are vested with power, in the interest of the children, and that of society, 'to prevent their youthful lives from being poisoned with the conduct, even of their mother * * *.' "

■ We have thoroughly examined the record in this case, and, without describing it in detail, can definitely say that there is nothing to indicate that the minors are not now being cared for in the best possible manner. Applicant failed to prove that their best interests and welfare would be served, from any standpoint, by transferring their custody from respondent to her. Here, there is not the conflict in the evidence on this issue that there was in the Adams v. Adams case, supra, but, even if there was, as there noted: "* * * the determination is properly one for the trier of facts, and its judgment will not be disturbed * * *, unless it is so clearly against the weight of the evidence as to show an abuse of discretion." There we explained:

"* * * One of the principal reasons why, under said rule of appellate review, such matters are left so largely to trial court's discretion, is their better position to appraise and weigh the evidence, as well as to determine what, under all of the circumstances with which they are familiar, will be for the best interests of the child. * * *."

■ Here, the trial court's order and/or judgment cannot be said to be clearly against the weight of the evidence, nor to constitute an abuse of his proper discretion. It is therefore affirmed.

All the Justices concur.