### Ex parte FORTUNE.

No. 26531.   Jan. 21, 1936.

Otjen & Carter, for plaintiff in error.

E. H. Lookabaugh, for defendant in error.

PER CURIAM. This action involves the custody of Arthur Ray Fortune. a minor, and an orphan. The child at the time of the institution of this proceeding was in the custody of his stepfather, J. L. Guest. By this proceeding his uncle, Robert Fortune, a brother of the child's deceased father, sought to obtain his custody.

The record discloses that on June 22, 1925, Julia Fortune. the deceased mother of said minor, was appointed guardian of his person and estate by the probate court of Jackson county, Ark.; and that subsequent to the death of the mother, the petitioner, Robert Fortune, the child's uncle, was appointed guardian of his person, and estate in succession of Julia Fortune, deceased.

After the appointment of Julia Fortune as guardian of Arthur Ray Fortune by the probate court of Jackson county, Ark., she was, on April 2, 1932, appointed guardian of the person and estate of her said minor son by the county court of Gray county, Tex., under the name of Julia Fortune Guest; and on April 17, 1933, J. L. Guest, the stepfather, who had the custody of the child at the time this action was instituted, was appointed guardian of the person of said Arthur Ray Fortune by the county court of Gray county, Tex.

The appointment of the mother as guardian by the probate court of Jackson county, Ark., vested that court with jurisdiction over the minor, which it could lose only in some prescribed orderly manner, and its jurisdiction did not thereafter depend upon the duration of the tenure in office of the person appointed guardian. Crosbie et al. v. Brewer, 68 Ok a. 16, 158 P. 388, 173 P. 441.

The record in this case shows that the probate court of Jackson county, Ark., was never ousted of jurisdiction. The petitioner in this action, Robert Fortune, was therefore the legally appointed, duly qualified, and acting guardian of the person and estate of Arthur Ray Fortune, at the time he filed his petition for a writ of habeas corpus.

However, the issuance of letters of guardianship are not conclusive on the question of the right of the guardian. to the custody of the infant ward. Upon the institution of habeas corpus proceedings by such guardian to obtain the custody of his ward, the court should determine the question of whether or not it will grant the writ according to the best interests and the welfare of the minor.

The controlling consideration is the question of what will best promote the ward's welfare. Hanrahan v. Sears (N. H.) 54 Atl. 702; People v. Bolton (Colo. App.) 146 P. 489.

In People v. Bolton supra, the Court of Appeals of Colorado, in its opinion, said:

"Counsel for relator contends that, under these statutes and letters of guardianship, the district court is powerless to deprive relator of the custody of his ward and award it to the respondent; that the issuance of the letters constitutes an adjudication as to the right of custody. With that contention we do not agree. The statute confers no greater right, power, or duty over the ward than the parents had at common law and under the statute to the custody and control of their offspring. In this jurisdiction it has long been held that every child is under the control of the state, and even the paternal right to its custody and control must yield to the interest and welfare of the child, and that the paramount

and controlling question by which courts must be guided in proceedings affecting the custody of the infant is the interest and welfare of the child. * * *

"We think the right of the guardian to the custody of his infant ward is subject to the same limitations, herein announced, as are the parents."

In determining an appeal in a habeas corpus proceeding, where the issue involved is the custody of a minor child, this court will make such order as the record in the case shows will be for the best interests of the child. Ex parte Sloan (Stanley v. Binson et al.) 147 Okla. 164, 296 P. 398.

It is, therefore, our duty to review the record in this case and determine therefrom whether or not the order entered by the district court of Blaine county, Okla., denying Robert Fortune, the guardian and uncle of said minor, a writ of habeas corpus, and permitting J. L. Guest, the stepfather of said minor, to retain his custody, is conducive to the best interests and welfare of the minor, or whether the best interests and welfare of the minor require that the custody should be awarded to his uncle and guardian.

We shall not attempt to set out the evidence presented to the district court of Blaine county in detail. We deem it sufficient to state that the uncontradicted testimony discloses that Arthur Ray Fortune. the minor, was less than 13 years of age at the time of the trial in the district court; that his father died when he was about two years of age; that shortly after the death. of his father his mother commenced living with J. L. Guest, who now has the custody of this child; that they lived together as man and wife for several years before they were married, and had a child born to them prior to their marriage; that petitioner. Robert Fortune, the uncle of Arthur Ray Fortune, bears a good reputation in the community in which he resides and provides a suitable home for his family, and is able to care suitably and properly for his nephew. Arthur Ray Fortune; that J. L. Guest, the stepfather of said Arthur Ray Fortune, departed with the child from Jackson county. Ark., in the nighttime in order to avoid trial in the courts of the state of Arkansas of a habeas corpus proceeding to determine whether he should retain the custody of said child or whether it should be granted to the uncle; that he has been convicted of a felony, the nature of which he refused to

disclose, and which the trial court never required him to disclose; that he has been married three times; that he has married since the death of the mother of Arthur Ray Fortune, and is now living on a farm which is owned by his present wife; that he has a child of his own by a former marriage who is being cared for by a relative of his residing in the state of Texas. The testimony of the assistant attorney for the Veterans' Bureau at Little Rock, Ark., the father of the minor child having been a World War Veteran, is to the effect that his investigation of the character and activities of Mr. Guest caused him to be of the opinion that Mr. Guest was not a proper custodian for the minor child. Arthur Ray Fortune testified that he desired to remain in the custody of his stepfather, but in view of the age of the child, and of the fact that his stepfather has not permitted the child to be out of his custody since shortly after the death of the child's father, we are not impressed with the contention that the child is able to properly judge for himself what is best for his welfare. We cannot escape the conclusion that the overwhelming weight of the testimony in this case clearly indicates that the best interests and the welfare of the minor, Arthur Ray Fortune, require that his custody should be awarded his uncle and guardian, the petitioner herein.

The judgment of the district court of Blaine county is, therefore, reversed, and this cause is remanded to that court, with instructions to grant the writ of habeas corpus, and direct the respondent, J. L. Guest, to deliver the custody of the minor, Arthur Ray Fortune, to the petitioner, Robert Fortune.

The Supreme Court acknowledges the aid of Attorneys C. H. Rosenstein, A. M. Widdows, and Lawrence Mills in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Rosenstein and approved by Mr. Widdows and Mr. Mills, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, and PHELPS, JJ. concur.