IN THE MATTER OF THE GUARDIANSHIP OF G.E.M.S.
2025 OK 2
Case Number: 121688
Decided: 01/14/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 2, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

IN THE MATTER OF THE GUARDIANSHIP OF G.E.M.S., MINOR CHILD

AMBER STANDFILL, Appellant,
v.
PATRICK AND AMY CHRISTLE, Appellees.

ON APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY 

Honorable Thomas C. Riesen, Special Judge

¶0 A minor child's mother appealed the district court's decision that denied the mother's motion to terminate a guardianship order of the minor child. This Court retained the appeal. We affirm the district court's decision. The district court did not abuse its discretion by ruling that the best interest of the child outweighed the substantial completion of the mother's guardianship requirements to terminate the guardianship and regain custody of the minor child.

DISTRICT COURT'S JUDGMENT AFFIRMED.

Daniel R. Bays, Bays Law Firm, PC, Oklahoma City, Oklahoma, for Appellant.

Zayne Whitchurch, Putnam Law Office, PLLC, Oklahoma City, Oklahoma, for Appellee.

Winchester, J.

¶1 Today, we address the question of whether the guardianship of G.E.M.S., a minor (Minor), should continue. The district court denied Appellant Amber Standfill's motion to terminate the guardianship of Minor, ruling that it was in the best interests of Minor for the guardianship to remain in place. Appellant Amber Standfill (Mother) appealed the denial, arguing that she completed the requirements stated in the guardianship order to regain custody of Minor. We retained the appeal.

¶2 The issues before this Court are whether the district court erred by failing to (1) terminate the guardianship or (2) give Mother further conditions to satisfy to terminate the guardianship. We answer both questions in the negative. The district court did not abuse its discretion in allowing the guardianship to continue, based on the evidence presented indicating that the welfare of Minor would be at risk if the court were to terminate the guardianship. The district court appropriately weighed Minor's best interests against the completion of the conditions, deciding to maintain the guardianship in light of those interests. The district court also set additional conditions for Mother to fulfill, including the need to improve her stability. We affirm the district court's decision to continue the guardianship of Minor.

FACTS AND PROCEDURAL HISTORY 

¶3 Minor was born on March 2, 2014, and she is currently ten (10) years of age. Mother and Minor's biological father (Father) separated when Minor was four years old. Mother received no financial help from Father, which forced Mother to work two jobs to provide for both herself and Minor.

¶4 In 2018, Mother met a married couple, Aron Taff (Mr. Taff) and Betty Taff (Ms. Taff). Struggling to make ends meet, Mother allowed the married couple to move into her home with her and Minor. Initially, the purpose of this living arrangement was for Mother to receive assistance in paying bills and maintaining the home. The dynamic of their living arrangement, however, quickly changed.

¶5 Between 2018 and 2021, Mother and the married couple began a collective form of parenting. Minor called the married couple "mom" and "dad," and the married couple publicly held Mother out as their "sister." According to Minor, instead of Mother handling discipline alone when Minor misbehaved, the married couple also participated. Further, Minor witnessed constant fighting within the home. The married couple fought often--both physically and verbally--and eventually, Mother and Ms. Taff began to fight as well. Apart from the exposure to violence within the home, Minor told her therapist and psychologist that Mr. Taff regularly had his hands on her. He would rub her back, place his hand on her leg, and spank her on her bare bottom. Minor expressed her discomfort with Mr. Taff's touching.

¶6 In February 2021, the married couple filed a petition to adopt Minor. Mother entered a consent and permanent relinquishment that would terminate Mother's parental rights and allow the married couple to adopt Minor. On April 19, 2021, after learning of the pending adoption, Appellees Patrick and Amy Christle, Minor's maternal grandparents, filed a petition to be appointed guardians of Minor's person and estate. The grandparents moved for a guardianship due to their concern regarding Mother's relationship with the married couple, Mother's mental health, and the fact that Mother, the married couple, and Minor were possibly homeless after being evicted from their home. The district court merged the guardianship matter with the maternal grandparents' motion to intervene and their motion for emergency guardianship in the married couple's adoption matter regarding Minor. On June 18, 2021, the district court granted an emergency guardianship of Minor to the maternal grandparents. On October 24, 2022, the district court filed letters of guardianship and an agreed order appointing maternal grandparents (Guardians) as full guardians.

¶7 The agreed order specified that before the guardianship could be terminated, Mother and Father must show proof of certain agreed-upon standards of conduct.

¶8 Minor has lived in Tennessee with Guardians since 2021. During this time, she has participated in ongoing therapy, counseling sessions, extracurricular activities, and school. Minor has had regularly scheduled phone calls with Mother and has also been able to meet with her for visits in Arkansas. At some point, the married couple divorced. In March 2023, approximately six months after the parties executed the agreed guardianship order, Mother married Mr. Taff, whom Minor was not allowed to have contact with while the guardianship was in place.

¶9 The same month, on March 27, 2023, Mother filed a motion to terminate guardianship, arguing that she had completed the standards of conduct and the guardianship should be terminated. Guardians objected.

¶10 On September 15, 2023, the district court held a hearing wherein the court heard testimony from Mother, Mr. Taff, Guardians, Minor's psychologist, Minor's therapist, and Minor's Guardian ad Litem (GAL). The district denied Mother's motion to terminate guardianship, holding that keeping the guardianship in place was in the child's best interests and setting a hearing date to review the guardianship again in September 2025. Mother appealed the denial of her motion to terminate the guardianship. We retained the appeal, and we affirm the district court's ruling.

STANDARD OF REVIEW

¶11 The Court reviews the appointment or termination of a guardian for an abuse of discretion. Gould v. Smith, 1965 OK 112405 P.2d 82Brigman v. Cheney, 1910 OK 316112 P. 993In re Guardianship of Holly, 2007 OK 53164 P.3d 137

DISCUSSION

I. THE DISTRICT COURT DID NOT ERR BY ALLOWING THE GUARDIANSHIP TO CONTINUE. 

¶12 On appeal, Mother argues that the district court erred by allowing the guardianship to continue. Mother contends that since she fulfilled the agreed standards of conduct, the district court should have terminated the guardianship. We disagree.

¶13 Under Oklahoma law, a guardianship may be terminated when it is no longer necessary. 30 O.S.2021, § 4-804In re Guardianship of Hatfield, 1972 OK 10493 P.2d 819see also Grose v. Romero, 1948 OK 120193 P.2d 1014In re Guardianship of M.R.S., 1998 OK 38960 P.2d 357 Id.

¶14 Despite having substantially completed the agreed-upon standards of conduct, Mother failed to prove by clear and convincing evidence that the circumstances that led to the creation of the guardianship have been corrected. The evidence admitted at the hearing showed that Mother completed the agreed upon standards of a stable income, stable housing, participation in counseling, completion of a drug and alcohol assessment, regular visits with Minor, and payment of child support. The court did not admit evidence showing the completion of the other standards of conduct other than Mother's testimony at the hearing.

¶15 Mother and Mr. Taff testified that the guardianship was no longer necessary. Specifically, they stated that Guardians were influencing Minor and that most things that Minor told her therapist and psychologist about her welfare were untrue. Mother denied that Minor ever witnessed any domestic violence while living with the married couple or watched inappropriate movies. She also denied that Mr. Taff inappropriately touched Minor. Mother believed that if the district court terminated the guardianship, Mr. Taff could and would have contact with Minor; Minor would be living with both Mother and Mr. Taff.

¶16 Minor's psychologist and therapist both testified that it was in Minor's best interest to stay with Guardians in Tennessee despite Mother having substantially completed the agreed-upon standards of conduct. The psychologist confirmed that Minor suffered from a substantial amount of trauma due to the behavior of Mother and Mr. Taff during their time living together. The psychologist noted that Minor felt shame not only from being spanked and humiliated by all three adults while outside the house, but also from being called "dumb" and "stupid." Minor recounted an incident where Mother and Ms. Taff forcibly shoved oatmeal down her throat to make her eat faster. These adults also subjected Minor to watch horror films that she felt uncomfortable watching, as well as explicit sex scenes from movies, reasoning that it was "good" for the young girl to be exposed to this sort of media. The psychologist corroborated that Minor relayed to her that she witnessed abuse and violence between the adults. Further, the psychologist believed the fact that Mr. Taff regularly had his hands on Minor was indicative of grooming. The psychologist confirmed that Minor began to self-harm by digging her nails into her flesh and hitting her head against a chair. The psychologist concluded that it would be in Minor's best interest for the guardianship to continue to avoid additional trauma with Mr. Taff and to keep her from self-harming.

¶17 The therapist's testimony at trial focused on the potential harm Minor would suffer in moving back to Oklahoma with Mother. Minor confided in the therapist that she was deeply distraught by the idea of moving back to Oklahoma, saying that she would kill herself if she was removed from Tennessee and forced to live with Mother and Mr. Taff. The therapist recounted instances of violence and abuse that Minor had witnessed before the guardianship was established. In particular, Minor witnessed Mr. Taff hit Mother and Ms. Taff. Minor also heard Mr. Taff tell Ms. Taff to kill herself. The therapist conveyed that Minor did not want to visit Mother after Minor became aware that Mother married Mr. Taff because Minor did not want any contact with Mr. Taff. The therapist voiced concerns that Mother would not protect Minor, especially from Mr. Taff. Given Minor's fragile emotional state, the therapist feared that if the district court terminated the guardianship, it could lead to Minor beginning to self-harm. Ultimately, the therapist concluded extending the guardianship was in Minor's best interest.

¶18 At the end of the hearing, Minor's GAL also recommended that the guardianship stay in place. She believed that, although Mother had substantially completed the agreed-upon standards of conduct, terminating the guardianship and returning Minor to Oklahoma would be detrimental to Minor's welfare. GAL was especially concerned with Minor's exposure to Mr. Taff. She noted that Mother had married the person with whom Minor was to have no contact while the guardianship order was still in effect. Further, GAL acknowledged that Minor made it clear not only to her but to Guardians, the psychologist, and the therapist that Minor wanted no contact with Mr. Taff. GAL testified that Minor was adamant that Mr. Taff was violent within the home, repeatedly encouraged her to watch sexually explicit content, and touched her in ways that made her feel uncomfortable. GAL concluded that the guardianship should continue and Minor should still have no contact with Mr. Taff. GAL did not believe that Minor was being influenced by Guardians as there was no reason why Guardians would subject Minor to additional mental health services and trauma. GAL raised concerns that both Mother and Mr. Taff admitted that Minor's living environment before the guardianship was inappropriate but neither provided specific reasons for this assertion and denied many of Minor's allegations. GAL expressed uncertainty about how any improvements could be made to the living environment if Mother had not acknowledged the inappropriate conduct toward Minor that led to the guardianship in the first place.

¶19 The district court found the testimony of Mother and Mr. Taff not to be credible. The district court instead agreed with the psychologist, therapist, and GAL, concluding that continuing the guardianship was in Minor's best interest.

¶20 The district court did not abuse its discretion in reaching its conclusion. The district court heard the parties testify, observed their demeanor on the witness stand, and was in a better position to evaluate their testimony than this Court from an examination of the record. Gibson v. Dorris, 1963 OK 235386 P.2d 186

¶21 Even more importantly, Minor was still in a fragile emotional state and expressed that she did not want any contact with Mr. Taff. The psychologist, therapist, and GAL emphasized the importance of maintaining this lack of contact. This is an ongoing standard of conduct that all three experts agreed was necessary for Minor's well-being. Yet Mother married Mr. Taff during the guardianship. If the guardianship was terminated, Minor would be forced to interact with the person Mother was specifically prohibited from bringing into contact with Minor. Mr. Taff acknowledged that he could be the reason for the separation of Mother and Minor, but he chose to stay with Mother. Mother's relationship with Mr. Taff was a significant factor that led to the establishment of the guardianship, and that condition has not been resolved. Consequently, the district court did not abuse its discretion in denying Mother's motion to terminate the guardianship as the impediment (Mother's relationship with Mr. Taff) to the natural Mother's custody has not been removed.

¶22 Further, the best interest of the child can outweigh the completion of guardianship requirements by a party seeking to regain custody of the child. Our Court has consistently emphasized that the primary consideration in custody and guardianship matters is the child's best interest. See, e.g., In re Adoption of L.B.L., 2023 OK 48529 P.3d 175In re Guardianship of C.D.A., 2009 OK 47212 P.3d 1207 Ex parte Hudspeth, 1954 OK 172271 P.2d 371Ex parte Fortune, 1936 OK 4653 P.2d 1100Brigman, 1910 OK 316

II. THE DISTRICT COURT GAVE MOTHER FURTHER CONDITIONS TO SATISFY PRIOR TO THE TERMINATION OF THE GUARDIANSHIP. 

¶23 Mother contends that the district court erred by failing to give her additional conditions to satisfy to terminate the guardianship. In its ruling, the district court emphasized that Mother should continue to visit Minor, as outlined in the standards of conduct. The district court also stated that Mother should continue in counseling and focus on achieving stability with her employment and housing situations. The journal entry of judgment noted that Mother was to continue to work and create a stable living environment. These are the conditions that the district court ordered Mother to continue to meet until the next hearing on this matter.

¶24 Even more, the best interest of Minor is the overriding consideration in this case, and the district court correctly determined that it was not in the best interest for the guardianship to end. We note that the district court will revisit the status of the guardianship and reassess Minor's best interest in September 2025.

CONCLUSION

¶25 The district court did not abuse its discretion in allowing the guardianship to continue based on the evidence presented to the court that terminating it would harm Minor's welfare. While Mother demonstrated significant compliance with the reunification plan, Mother did not prove by clear and convincing evidence that the conditions that led to the creation of the guardianship have been corrected. Additionally, the district court imposed further conditions for Mother to complete. For these reasons, we affirm the district court's denial of Mother's motion to terminate guardianship.

DISTRICT COURT'S JUDGMENT AFFIRMED.

CONCUR: ROWE, C.J., KUEHN, V.C.J., WINCHESTER, EDMONDSON, COMBS, GURICH, DARBY, AND KANE, J.J.

FOOTNOTES

1) Six (6) months of stable, gainful employment.
2) Six (6) months of stable housing.
3) Six (6) months of no adverse involvement with law enforcement.
4) Completion of a custody evaluation or OKDHS competency evaluation and follow all recommendations.
5) Completion of the Nurturing Parenting Skills and/or Compassion Workshop at Family Builders.
6) Regularly participate in individual counseling, follow all recommendations, and sign a release for the Guardian ad Litem.
7) Completion of a comprehensive drug and alcohol assessment with Specialized Outpatient Services (or equivalent agency).
8) Regular visitation with Minor as fixed by court order or agreement with the Guardians.
9) Mother shall pay $123.00 per month in child support.

 See Green v. Mac's Plating Works, 1977 OK 71563 P.2d 148former proceedings to which reference is made in a pending cause.").